IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| | * |
| LEGACY INVESTMENT AND MANAGEMENT, LLC | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-12-2877 |
| SUSQUEHANNA BANK *et al.*, | * |
| | * |
| Defendants/Counter-claimants/Third Party Plaintiffs/Third Party Counterclaim Defendants | * |
| v. | * |
| LEGACY INVESTMENT & MANAGEMENT, INC. *et al.*, | * |
| Third Party Defendants/ Fourth Party Claimants | * |
| | * |
| v. | * |
| | * |
| KENNEDY COMPOUND, LLC, *et al.*, | * |
| Fourth Party Defendants | * |

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2013 SEP 26 A 10: 47
CLERK'S OFFICE
AT BALTIMORE
BY_____
DEPUTY

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Legacy Investment and Management, LLC ("Legacy") sued
Susquehanna Bank ("the Bank") and Susquehanna Trust & Investment
Company ("STIC"), together ("Susquehanna"), in the Circuit Court
for Baltimore County, Maryland, for breach of contract and
unjust enrichment. ECF No. 2 at 1, 14-15. Legacy also sought

an injunction requiring Susquehanna to unfreeze a bank account containing funds allegedly owned by Legacy and Legacy's customers--various Homeowners and Condominium Associations ("HOAs"). *Id.* at 10-15. Susquehanna removed to this Court. ECF No. 1. Susquehanna counterclaimed against Legacy and interpled Legacy and Legacy's customers to determine ownership of the funds.[1] ECF No. 16 at 20-40. Pending are: (1) the defendants' motion to liquidate the account and deposit the funds in the Court's registry; (2) the defendants' motions to dismiss Legacy's claims for failure to obey a court order, ECF No. 120, or for lack of prosecution, ECF No. 250;[2] (3) the defendants' motions to dismiss the counterclaims of several HOAs for failure to state a claim, ECF Nos. 131,[3] 161,[4] 191;[5] and (4)

---

[1] Susquehanna brings the interpleader action under 28 U.S.C. § 1335. ECF No. 16 at 35.

[2] Susquehanna also moved for a default judgment against Legacy. ECF No. 250. This motion will be resolved in a subsequent memorandum opinion and order.

[3] Susquehanna moves to dismiss the third party counterclaim of Spring Glen Homeowners Association, Inc. ("Spring Glen"). ECF No. 131 at 1.

[4] Susquehanna moves to dismiss the third party counterclaim of the Kings Council Interpleader Claimants ("Kings Council"). ECF No. 161 at 1-2. These claimants include: Council of Unit Owners of Kings Council Condominium; Ridgely Homeowners Association, Inc.; Howard's Ridge Homeowners Association, Inc.; Council of Unit Owners of Whiskey Bottom Condominium South, Inc.; The Council of Unit Owners of Gatewater Landing Condominium; The Olney Towne Association, Inc.; Mineral Springs Village Community Association, Inc.; The Oaks at Waters Edge Condominium, Inc.;

several HOAs' motion to file a surreply, ECF No. 244. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2012). For the following reasons: (1) the defendants' motion to liquidate the account will be granted in part and denied in part; (2) the defendants' motion to dismiss Legacy's claims for failure to obey a court order will be granted, and the defendants' motion to dismiss Legacy's claims for failure to prosecute will be denied as moot; (3) the defendants' motions to dismiss the HOAs' counterclaims will be granted in part and denied in part; and (4) the motion to file a surreply will be denied.

---

The Crossing at Chaddsford Homeowners Association, Inc.; The [Council] of Unit Owners of Treover, A Condominium, Inc.; The Council of Unit Owners of the Gardens at Owings Mills I; Frankford Estates Homeowners Association, Inc.; Burns Street Tenants Association, Inc.; Mt. Lubentia Community Association, Inc.; Cradlerock Farm Homeowners Association, Inc.; Iverson Village Condominium Association; The Council of Unit Owners of The Vineyards Condominium, Inc.; The Council of Unit Owners of Rosecroft Commons Condominium, Inc.; and Hartford-Thayer Condominium, Inc. *Id.*

[5] Susquehanna moves to dismiss the third party counterclaim of Hilltop Condominium Association, Inc. ("Hilltop"). ECF No. 191 at 1.

I.    Background[6]

A. Facts

Formed in 2007, Legacy and several related entities managed properties for HOAs located in the Baltimore and Washington, DC metropolitan areas. ECF Nos. 2 at 2, 16 at 27. William Kyndall Francis is the sole member of Legacy. ECF No. 16 at 5. Legacy maintained bank accounts for its HOA customers. ECF Nos. 2 at 3, 16 at 27. Each HOA had at least two accounts--an operating account and a capital reserve account. ECF No. 2 at 3. The reserve accounts funded major projects and held large sums of money. *See id.*

In 2011, Legacy opened more than 80 deposit accounts at the Bank in the names of about 40 of Francis's wholly-owned businesses and 40 HOAs. ECF No. 16 at 27. Legacy, and its related entities, had the authority to transfer funds between these accounts. *Id.* at 28. In October 2011, Legacy also opened an investment account at STIC which held funds allegedly owned by Legacy and the capital reserves of several HOAs. ECF Nos. 2 at 4, 16 at 30. STIC employees recommended aggregating the HOAs' capital reserve accounts to earn more interest than the individual accounts. ECF No. 16 at 29. Legacy deposited about

---

[6] The background facts are taken from Legacy's complaint, ECF No. 2, Susquehanna's answer, ECF No. 16, and their accompanying exhibits. For each motion to dismiss for failure to state a claim discussed *supra*, the facts are taken from the related counterclaim.

4

$1.2 million in the investment account. *See id.* at 30. The investment account did not have sub-account reporting, but Legacy tracked the ownership of the funds.[7] Legacy alleges that, to maintain the high balance in the investment account, it advanced funds to its customers rather than withdraw their capital reserves from the investment account. ECF No. 2 at 5. This depleted Legacy's operating funds. *See id.* at 7, 9.

In August 2012, the Bank approved Legacy's application for a $250,000 letter of credit ("LOC") for Legacy's landlord, Oekos Rivers Columbia, LLC ("Landlord"), secured by the investment account. ECF No. 16 at 31. Legacy alleges that the Bank improperly used the entire balance of the investment account, almost $1.3 million, to secure the LOC, instead of Legacy's portion of the account, almost $600,000. *See* ECF No. 2 at 8. As a result, Legacy could not draw on the account to replace the funds it had advanced to the HOAs.[8] *See id.* at 7. Through counsel, Legacy "frantically" negotiated with Susquehanna to

---

[7] Legacy alleges that STIC did not offer sub-account reporting. ECF No. 2 at 4. STIC asserts that it offered this service to Legacy, but Legacy declined this service. ECF No. 16 at 30.

[8] Legacy asserts that it needed the funds to process payroll, which was due five days after Susquehanna initially met with Legacy to negotiate the LOC's release. ECF No. 2 at 8. Susquehanna contends that the investment account did not function as "typical demand deposit account[s]." ECF No. 16 at 29. The investment account funds were placed in illiquid investments and required notice of at least three business days to liquidate. *See id.* at 29.

5

replace the LOC and liquidate the account. *See* ECF Nos. 2-2, 2-3, 2-4. Susquehanna refused to release the LOC unless it received $275,000 in collateral, which Legacy did not have. ECF Nos. 2 at 9-10, 2-4 at 2.

Around this time, Susquehanna alleges that it was contacted by an HOA engaged in an internal audit to verify the existence of the HOA's deposit account. ECF No. 16 at 32. Susquehanna told the HOA that the account number it provided did not exist. *Id.* The HOA's accountant examined the bank statement provided to the HOA by Legacy and detected "significant differences" between it and Susquehanna's normal statement format. *Id.* at 33. The accountant forwarded the statement to Susquehanna, and the Bank discovered that: (1) the account number had been altered; (2) a Bank logo had been added to the statement; and (3) the amount of funds, rate of interest, and the statement period had been altered. *Id.* The Bank soon learned that several other HOAs had also received falsified bank statements. *Id.* at 34. The Bank also discovered that Legacy had made several transfers "between deposit accounts held for the HOAs at the Bank." *Id.* Susquehanna believed that these transfers were improper and unauthorized by the HOAs, and it revoked Legacy's access to the HOAs' deposit accounts. *Id.* Legacy asserts that Susquehanna should have discussed "the reasons behind the bank statements with the manual adjustments" with it before

Susquehanna revoked Legacy's access to the accounts. ECF No. 2 at 6. Legacy also contends that Susquehanna's actions severely disrupted its business. *Id.* at 7.

In September 2012, Susquehanna met with Francis and his counsel to attempt to obtain an accurate accounting of the investment account. ECF No. 16 at 34. According to Susquehanna, Francis only offered oral assurances that Legacy was properly accounting for the funds in the account and that they would not be subject to multiple claims. *Id.* at 35. Susquehanna did not find these assurances sufficient and froze the account. *See* ECF Nos. 2 at 7, 16 at 34-35. Legacy contends that the September meeting centered on negotiations to resolve the LOC issue. ECF No. 2 at 8. Legacy asserts that it offered Susquehanna several reasonable proposals to release the LOC that were initially acceptable to Susquehanna and the Landlord. *Id.* at 7-10. Susquehanna allegedly negotiated in bad faith, however, and later refused to accept any of Legacy's proposals, causing more disruption to Legacy's business. *Id.* at 9-10.

B. Procedural History

On September 24, 2012, Legacy sued Susquehanna in the Circuit Court for Baltimore County, Maryland, alleging breach of contract and unjust enrichment. *Id.* at 14-15. It also sought a temporary restraining order, and preliminary and permanent injunctive relief, to restore Legacy's access to the HOA deposit

accounts and the investment account. *Id.* at 10-14. Susquehanna removed to this Court on the basis of diversity jurisdiction.[9] ECF No. 1. On October 5, 2012, Susquehanna answered Legacy's complaint and asserted multiple counterclaims against Legacy.[10] Susquehanna also interpled 47 HOAs, Francis, and Legacy Investment & Management, Inc.,[11] to determine the ownership of the funds in the investment account.[12] ECF No. 16 at 1-2, 35-36.

   On October 24, 2012, the Court sent James A. List, Legacy's counsel of record on its complaint, a letter asking if he or another attorney intended to enter an appearance on behalf of Legacy in this case. ECF No. 70. On October 25, 2012, List informed the Court by letter that he would not enter an appearance, and he did not know if another attorney would appear

---

[9] A Limited Liability Company ("LLC") has the citizenship of all of its members for diversity purposes. *Cent. W. Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Legacy's sole member, Francis, is a citizen of Maryland. ECF No. 16 at 22. Susquehanna's state of incorporation is Pennsylvania, and its principal place of business is also Pennsylvania. ECF No. 67 at 3.

[10] Susquehanna counterclaimed against Legacy for breach of contract and trademark infringement. ECF No. 16 at 36-39.

[11] The investment account was opened in the name of this entity, not Legacy Investment and Management, LLC, the plaintiff in the original suit. *See* ECF No. 131-1 at 1-2.

[12] Susquehanna served the third-party complaint on all interpled claimants. ECF Nos. 80, 84, 87-89, 93-96, 98-100. On May 8, 2013, the Court granted Susquehanna's motion for alternative service on Francis by U.S. mail. ECF No. 203. Francis was served the same day. ECF No. 204.

8

for Legacy. ECF No. 72. The Court then ordered Legacy twice by letter to "have new counsel enter an appearance or be subject to dismissal of its claims." ECF No. 82 (November 14, 2012), ECF No. 86 (November 29, 2012). Legacy did not respond to the letters or enter an appearance of counsel.[13] On February 7, 2013, Susquehanna moved to dismiss Legacy's claims for failure to obey an order of the court. ECF No. 120 at 1. On July 31, 2013, Susquehanna moved to dismiss Legacy's claims for lack of prosecution.[14] ECF No. 250.

On December 31, 2012, Spring Glen answered Susquehanna's third-party complaint and asserted a counterclaim against Susquehanna for unjust enrichment.[15] ECF No. 105 at 23-24. On February 20, 2013, Susquehanna moved to dismiss the counterclaim for failure to state a claim. *See* ECF No. 131-1 at 4.

On March 7, 2013, Kings Council answered Susquehanna's third-party complaint and asserted a counterclaim against Susquehanna for bad faith conduct with respect to a fiduciary

---

[13] The letters were sent to different addresses and were returned as undeliverable. ECF Nos. 85, 103.

[14] Susquehanna also moved for a default judgment against Legacy. ECF No. 250.

[15] Spring Glen also asserted a claim against Legacy for breach of contract. ECF No. 105 at 22.

relationship.[16]  ECF No. 148 at 51-52.  On March 18, 2013,
Susquehanna moved to dismiss the counterclaim for failure to
state a claim.  ECF No. 161.  On April 1, 2013, Kings Council
responded in opposition.  ECF No. 169.  On May 15, 2013,
Susquehanna filed a reply.  ECF No. 190.  On July 18, 2013,
Kings Council moved to file a surreply to Susquehanna's motion
to dismiss.  ECF No. 244.  On July 31, 2013, Susquehanna opposed
Kings Council's motion to file a surreply.  ECF No. 247.

On March 20, 2013, Hilltop answered Susquehanna's third-
party complaint and asserted counterclaims against Susquehanna
for unjust enrichment and bad faith conduct with respect to a
fiduciary relationship.[17]  ECF No. 166 at 20-21.  On April 15,
2013, Susquehanna moved to dismiss the counterclaims for failure
to state a claim.[18]  ECF No. 191.  On May 17, 2013, Hilltop
responded in opposition.  ECF No. 209.  On May 31, 2013,
Susquehanna filed a reply.  ECF No. 212.

---

[16] Kings Council also asserted seven claims against Francis,
Legacy, and Legacy's related entities.  ECF No. 148 at 44-50.

[17] Hilltop also asserted four claims against Francis, Legacy, and
Legacy's related entities.  ECF No. 166 at 18-20.

[18] The Council of Unit Owners of Montgomery Woods Condominium,
Inc. ("Montgomery Woods"), Capital View IV Association, Inc.,
and Holly Hills Condominium, also answered Susquehanna's third
party complaint but did not assert any claims.  ECF No. 132
(Montgomery Woods--February 20, 2013), ECF No. 145 (Capital
View--March 1, 2013, ECF No. 226 (Holly Hills--June 14, 2013).

On August 1, 2013, the Court ordered the parties to submit additional briefing regarding the Court's jurisdiction over the interpleader claim. ECF No. 252. On August 14 and 15, 2013, Susquehanna, Hilltop, Montgomery Woods, and Kings Council submitted additional briefing. ECF Nos. 253-56. On August 20, 2013, Susquehanna opposed Montgomery Woods's brief which argued that the Court lacked jurisdiction over the interpleader claim. ECF No. 257.

II. Analysis

A. Jurisdiction[19]

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." *Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F. App'x 767, 769 (4th Cir. 2002). 28 U.S.C. § 1335(a) grants district courts original

---

[19] A court has supplemental jurisdiction over "additional state claims if they arose out of a common nucleus of operative fact" as the claim over which the district court has original jurisdiction, "such that the plaintiff would ordinarily be expected to try the claims in one judicial proceeding." *White v. Cnty. of Newberry, S.C.*, 985 F.2d 168, 171-72 (4th Cir. 1993)(internal quotation marks omitted). As discussed *infra*, the Court has original jurisdiction over the interpleader action under § 1335. All of the counterclaims discussed in this memorandum "revolve around a central fact pattern," *id.* at 172, as the interpleader action--Legacy's account activity at Susquehanna as it pertained to funds owned by Legacy's customers, the HOAs. *See supra* Section II.C. Thus, the Court has supplemental jurisdiction over Susquehanna's state law counterclaims against Legacy, and the HOAs' counterclaims against Susquehanna.

11

jurisdiction over interpleader actions, in which a "person, firm, or corporation, association, or society" has custody over "money or property of the value of $500 or more,[20] . . . if"

> (1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property[;] and if (2) the plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount . . . .

Statutory interpleader only requires minimal diversity among the claimants[21]--"the citizenship of a disinterested stakeholder [is] irrelevant." C. Wright, A. Miller, & M. Kane ("Wright & Miller"), 7 Fed. Prac. & Proc. Civ. § 1710 (3d ed. 2013). Susquehanna does not assert any ownership interest to the funds in the investment account, *see, e.g.*, ECF No. 131-1 at 3--thus its citizenship is irrelevant to jurisdiction. *See id.*

### 1. Minimal Diversity

The Court requested additional briefing from the parties to ensure that: (1) the claimants were minimally diverse;[22] and (2)

---

[20] Susquehanna asserts that the investment account holds about $1.3 million. ECF No. 178 at 1.

[21] *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31, 87 S. Ct. 1199, 1203, 18 L. Ed. 2d 270 (1967).

[22] Several of the parties in this action are Limited Liability Companies ("LLCs") which have the citizenship of all of their members. *See Central West Virginia Energy,* 636 F.3d at 103. Although the parties identified the states whose laws each entity was organized under, they did not identify the

12

the claimants were sufficiently adverse, because "numerous HOAs have the same counsel." ECF No. 252 at 1. Although the parties' briefs did not establish the citizenship of every claimant, one claimant--Kenyon Manor Condo Association, Inc.--is believed by the parties "to be a District of Columbia corporation with a principal place of business in the District of Columbia." ECF No. 253 at 5. Virtually all the other claimants are citizens of Maryland--either incorporated in Maryland, with a principal place of business in Maryland, or having a member who is a citizen of Maryland. *See, e.g.*, ECF No. 256 at 4-7. The District of Columbia is considered a state for diversity purposes.[23] Although Kenyon Manor's counsel has not entered an appearance in this action,[24] it was one of the original claimants interpled by Susquehanna in its third party complaint, ECF No. 16 at 2, and it was served on October 17, 2012, ECF No. 93. Diversity jurisdiction is determined from the

---

citizenships of the members of the various LLCs. *See, e.g.*, ECF No. 16 at 22-26.

[23] *See Nat'l Mut. Ins. Co. of Dist. of Col. v. Tidewater Transfer Co.*, 337 U.S. 582, 602-03, 69 S. Ct. 1173, 1183, 93 L. Ed. 1556 (1949).

[24] The Court need not decide whether claimants represented by the same counsel can meet the "adversity" requirement of § 1335, because the parties have identified one claimant who is minimally diverse and is not represented by the same counsel as any other claimant.

13

time the complaint is filed.[25]  Thus, the parties have established the minimal diversity required by § 1335.[26]

### 2. Motion to Deposit Funds

For subject matter jurisdiction, § 1335 also requires the stakeholder to deposit the disputed funds with the Court.  *See* § 1335(a)(2).  Susquehanna has not done so yet, but it has moved the Court for an order to liquidate the investment account and deposit the funds in the Court's registry.  ECF Nos. 178-79. Some of the HOAs argue that Susquehanna's failure to deposit the funds deprives the Court of subject matter jurisdiction.  *See, e.g.*, ECF No. 209 at 7.  However, an interpleader stakeholder that does not immediately deposit the disputed funds with the Court is entitled to perfect jurisdiction by moving to deposit the funds at a later time, as long as there is no "persistent failure" to perfect subject matter jurisdiction.  *See Lincoln Gen. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 425 F. Supp. 2d 738, 742 (E.D. Va. 2006) (the failure to deposit funds, or obtain a bond, "is a jurisdictional defect that a stakeholder

---

[25] Wright & Miller, § 3608.

[26] Montgomery Woods alone argues that the Court should dismiss this case for lack of subject matter jurisdiction, because Legacy's original claims against Susquehanna are stale and the Court has authority under 28 U.S.C. § 1367 "to decline to exercise supplemental jurisdiction over a claim."  ECF No. 255 at 2-3.  However, § 1335(a) grants district courts *original* jurisdiction over statutory interpleader claims.  Accordingly, the Court will not dismiss the interpleader action.

14

may easily cure and is therefore insufficient to defeat an otherwise appropriate statutory interpleader action"). Susquehanna's motion indicates its intent to perfect the Court's subject matter jurisdiction.[27] Accordingly, the Court will grant Susquehanna's motion for an order to deposit the investment account funds in the registry of the Court.[28]

### 3. Motion to Dismiss Susquehanna from Action

With its motion to liquidate the investment account, Susquehanna also moves for its dismissal from the interpleader

---

[27] In interpleader actions, the stakeholder must also establish that: (1) he has the right to "invoke[e] the remedy" based on a threat of conflicting claims to the funds in the stakeholder's possession; and (2) he is entitled to equitable relief--he is not guilty of laches or unclean hands. Wright & Miller, § 1714. Susquehanna has alleged that the ownership of the funds in the investment account is disputed and, due to Legacy's failure to properly track the funds' ownership, Susquehanna cannot conclusively determine the true owners. *See* ECF No. 16 at 34-36. Although Kings Council initially asserted that Susquehanna was "equitably estopped from interpleader relief," ECF No. 148 at 26, it now contends that the Court has subject matter jurisdiction, *see* ECF No. 256. Susquehanna initiated this interpleader action within a month of meeting with Legacy to discuss the ownership of the investment account funds. *See supra* Section I.B. Accordingly, the Court finds no equitable bar to awarding interpleader relief.

[28] Only Kings Council has responded to Susquehanna's motion to liquidate. Kings Council does not oppose the motion, as long as the investment account funds are "deposited in an interest-bearing account for the ultimate benefit of the rightful owners of those funds, subject to further order of this Court." ECF No. 199 at 2. The Local Rules of the District of Maryland require all registry funds to "be invested at interest." Local Rule 508 (D. Md. 2012). Thus, there is no opposition to Susquehanna's motion to liquidate.

action when the investment account funds are deposited in the Court's registry. *See* ECF No. 178-1 at 6. Kings Council opposes this motion on the grounds that Susquehanna has failed to join necessary parties, "including but not limited to," two HOAs represented by the same counsel as the rest of the Kings Council claimants. *See* ECF No. 199 at 3.

When a disinterested interpleader plaintiff satisfies the jurisdictional requirements to establish an interpleader claim, the stakeholder will generally be discharged from liability and dismissed from the interpleader action.[29] However, a stakeholder will not be dismissed if its participation in the action is required.[30] Interpleader actions follow the same joinder rules

---

[29] *MetLife Investors USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 314 (E.D.N.Y. 2010) *aff'd sub nom. MetLife Investors USA Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011) (*citing New York Life Ins. Co. v. Connecticut Development Authority,* 700 F.2d 91, 95 (2d Cir. 1983)); *see also Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 132 (4th Cir. 1984) (affirming actions of the Bankruptcy Court below which, *inter alia*, dismissed the disinterested stakeholder from the interpleader action after finding interpleader appropriate).

[30] *See, e.g., Bankers Trust Co. of W. New York v. Crawford*, 559 F. Supp. 1359, 1365 (W.D.N.Y. 1983) (denying motion to dismiss stakeholder who wished to reserve the right to dispute any award of interest); *New York Life Ins. Co. v. Deshotel*, CIV.A. 94-3278, 1995 WL 529838, at *2 (E.D. La. Sept. 7, 1995) (dismissal of stakeholder appropriate if stakeholder was "in fact" disinterested in the funds in the account) (*citing* Wright & Miller, § 1716); *cf. Truck-A-Tune, Inc. v. Re*, 856 F. Supp. 77, 80 (D. Conn. 1993) *aff'd*, 23 F.3d 60 (2d Cir. 1994) ("The burden is on the party seeking interpleader to demonstrate its entitlement to the remedy.").

as any other federal court action, including Federal Rule of Civil Procedure 19[31] which governs joinder of necessary parties. Accordingly, the Court must join necessary parties if possible, and dismiss an interpleader action if there are indispensable parties that cannot be joined. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 863-64, 872, 128 S. Ct. 2180, 2189, 2194, 171 L. Ed. 2d 131 (2008). The party raising the defense of failure to join a necessary party has the burden "to show that the person who has not joined is needed for a just adjudication."[32] If this burden is met, "the burden devolves on the party whose interests are adverse to the unjoined party to negate this conclusion." Wright & Miller, § 1609.

---

[31] Rule 19 requires joinder of persons who meet the following criteria, if feasible:

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

[32] *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (*citing* Wright & Miller, § 1609).

Kings Council has asserted facts that raise the possibility

that "an unjoined party whose joinder is required under Rule 19

exists." *See id.* It claims that The Council of Unit Owners of

Gardens at Owings Mills II and The Council of Unit Owners of

Gardens at Owings Mills III were customers of Legacy and have

funds in the investment account.[33] *See* ECF No. 199 at 6. Thus,

without their joinder, the Susquehanna may be "subject to a

substantial risk of incurring . . . inconsistent obligations."

Rule 19(1)(B)(ii); *see also Pimentel*, 553 U.S. at 872, 128 S.

Ct. at 2193-94. If Susquehanna opposes the joinder of these

parties, it has the burden of establishing that their joinder is

not required under Rule 19.[34] Accordingly, Susquehanna's

---

[33] If Kings Council can establish that these claimants are
necessary parties, Kings Council may move for an order requiring
their joinder. *See, e.g., Minnesota Life Ins. Co. v. Fitzwater*,
2:11-CV-00360, 2012 WL 252637, at *3 (S.D.W. Va. Jan. 26, 2012)
(ordering joinder of a necessary party in interpleader action).
If their joinder is not possible, Kings Council may move for
dismissal of the interpleader action for failure to join an
indispensable party. *See Pimentel*, 553 U.S. at 863-64, 872, 128
S. Ct. at 2189, 2194 (dismissing an interpleader action for
failing to join an indispensable party). Alternatively, these
parties may intervene in this action. Wright & Miller, § 1715.
Intervention appears feasible, because the same counsel
represents both these parties and the Kings Council claimants.
ECF No. 199 at 3; *see also* 39 F.R.D. 69, 92 (1966) (Advisory
Committee's Notes to Rule 19) ("The absentee may sometimes be
able to avert prejudice to himself by voluntarily appearing in
the action or intervening on an ancillary basis.").

[34] *See* Wright & Miller, § 1609.

participation in the interpleader action is still required, and its motion to dismiss will be denied.[35]

B.    Motion to Supplement

Kings Council seeks "leave to file [a] supplemental memorandum" to its opposition to Susquehanna's motion to dismiss. *See* ECF No. 244. Unless otherwise ordered by the court, a party may not file a surreply. Local Rule 105.2(a) (D. Md. 2012). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented in his opponent's reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd* 85 F. App'x 960 (4th Cir. 2004).

As discussed *infra*, the Court will deny Susquehanna's motion to dismiss Kings Council's counterclaim, except as to its punitive damages claim.[36] Kings Council does not need a surreply to contest Susquehanna's claim that it is not entitled to punitive damages. *See* ECF No. 244 at 1-2. Accordingly, Kings

_____

[35] Susquehanna's dismissal is also inappropriate, because the court will deny its motion to dismiss with respect to two counterclaims asserted by claimants. *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264 (3d Cir. 2009) ("The modern approach . . . is that, where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court.").

[36] *See infra* Section II.D.3.a.

Council's motion to file a surreply will be denied. *See Khoury*, 268 F. Supp. 2d at 605.

C. Motions to Dismiss Legacy's Claims

Susquehanna moves to dismiss Legacy's claims because Legacy has not complied with two orders of this Court requiring Legacy to obtain counsel.[37] *See* ECF No. 120 at 1, 3. Legacy has not responded to Susquehanna's motion to dismiss, entered an appearance of counsel, or participated in this case since its initial filing of the complaint in the Maryland Circuit Court.

The federal district courts have authority to dismiss actions for failure to comply with court orders. *See Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (*citing* Fed. R. Civ. P. 41(b)). A court determines the propriety of dismissal in such cases by reviewing:

> (i) the degree of personal responsibility of the plaintiff; (ii) the amount of prejudice caused the defendant; (iii) the existence of a history of deliberately proceeding in a dilatory fashion, and (iv) the existence of a sanction less drastic than dismissal.

*Id.* (*citing Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982)). The four factors "are not a rigid four-prong test"--"the propriety of a dismissal . . . depends on the particular circumstances of the case." *Ballard*, 882 F.2d at 95.

---

[37] "[A] corporation cannot appear in an action in a federal district court unrepresented by counsel." Wright & Miller, § 1333.

"In addition, a plaintiff should receive a warning that failure to obey an order of the district court could result in dismissal." *Brown v. Attorney Gen. of Com. of Va.*, 65 F.3d 166, at *2 (4th Cir. 1995)(unpublished table decision).

First, even if Legacy had hired counsel, it would bear some responsibility for its counsel's failing to enter an appearance.[38] If Legacy has not hired counsel, it bears full responsibility for failing to comply with this Court's orders.[39] This favors dismissal.

Second, Susquehanna alleges that Legacy's failure to enter an appearance has caused it significant prejudice, because Susquehanna has been: (a) "completely unable to address the merits of Legacy's claims . . . [or make] meaningful headway with its counterclaims against Legacy;" and (b) "prevented . . . from engaging in any meaningful discussions or discovery with Legacy." ECF No. 120 at 5. A defendant is substantially prejudiced when, because of the plaintiff's actions, it cannot defend against the plaintiff's claims or conduct discovery. *See*

---

[38] *Cf. Doyle v. Murray*, 938 F.2d 33, 35 (4th Cir. 1991) ("It is . . . proper, within bounds, to hold clients to some measure of responsibility both for selecting competent attorneys and, more important, for supervising their conduct in representing them under ordinary principles of agency.").

[39] *Cf. Brown v. Astrue*, 3:11CV214-HEH, 2012 WL 604135, at *2 (E.D. Va. Feb. 8, 2012) *report and recommendation adopted*, 3:11CV214-HEH, 2012 WL 604040 (E.D. Va. Feb. 23, 2012) (The plaintiff "bears the burden of bringing his case forward . . . and demonstrating that he is entitled to relief.").

*Gainey v. Alliance One*, 1:11CV279, 2012 WL 4482988, at *2 (W.D.N.C. Sept. 27, 2012). This weighs in favor of dismissal.

Third, Susquehanna alleges that Legacy has a "history" of dilatory conduct in this action, because: (1) Legacy has not properly served Susquehanna with its original complaint; and (2) Legacy has not filed any responsive pleadings. *See* ECF No. 120 at 6-7. The failure of Legacy to participate in this suit or to respond to this Court's orders suggests that Legacy is "deliberately proceeding in a dilatory fashion," *Ballard*, 882 F.2d at 95, and favors dismissal.

Fourth, the Court must consider if the "extreme remedy" of dismissal is warranted, or if a lesser sanction is appropriate. *See Berry v. S. Carolina Dep't of Soc. Servs.*, 121 F.3d 697, at *6 (4th Cir. 1997)(unpublished table decision)(dismissal should be "used only when a party has displayed callous disregard to its obligations or exhibited very bad faith"). Here, after Legacy's counsel for the state court action informed the Court that he would not appear in the action in this Court, ECF No. 72, the Court twice ordered Legacy to appear by counsel or face dismissal of its claims. ECF Nos. 82, 86. Legacy has not responded to these orders. Thus, no sanction short of dismissal would be effective.[40] Because the *Chandler Leasing* factors favor

---

[40] *See Macon v. Geico Ins.*, 8:11-CV-00007-TMC, 2012 WL 1825227, at *2 (D.S.C. Feb. 28, 2012) *report and recommendation adopted,*

dismissal, and Legacy was warned that failure to obey the Court's order would result in dismissal, the Court will dismiss Legacy's claims against Susquehanna.[41]  *See Gainey*, 2012 WL 4482988, at *2 ("When the Court has issued an explicit warning that continued failure to comply could result in dismissal, this is a critical fact which supports the Court's discretion to dismiss.") (*citing Ballard*, 882 F.2d at 96)).

---

CIV.A. 8:11-00007-TM, 2012 WL 1825236 (D.S.C. May 18, 2012) *aff'd,* 474 F. App'x 399 (4th Cir. 2012) ("Because Plaintiff has already ignored deadlines set by the Court, sanctions less drastic than dismissal would not be effective."); *see also Gainey*, 2012 WL 4482988, at *3 ("In view of the fact that the Plaintiff has been warned on more than one occasions that his action could be dismissed, this Court has little other alternative to dismissal. Any other course would place the credibility of the court in doubt and invite abuse.") (*quoting Ballard*, 882 F.2d at 96) (internal quotation marks and punctuation omitted)); *cf. Link v. Wabash R. Co.*, 370 U.S. 626, 629-30, 82 S. Ct. 1386, 1388, 8 L. Ed. 2d 734 (1962) (power to dismiss for failure to prosecute "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts").

[41] Susquehanna's motion to dismiss Legacy's claims for failure to prosecute, ECF No. 250, will be denied as moot.

D.    Motions to Dismiss for Failure to State a Claim[42]

  1.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[42] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

This requires that the plaintiff do more than "plead[]
facts that are 'merely consistent with a defendant's
liability'"; the facts pled must "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief. *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief." *Id.* (internal quotation marks and alteration omitted).

     2. Unjust Enrichment Counterclaims Against Susquehanna

Under Maryland law,[43] unjust enrichment requires: (1) a
benefit conferred on the defendant by the plaintiff; (2) a
defendant's appreciation or knowledge of the benefit; and (3)
the defendant's acceptance or retention of the benefit under

---

[43] Spring Glen asserts that "all the actions at issue took place
in Maryland." ECF No. 105 at 20. Hilltop alleges that Francis
and Susquehanna entered into their banking relationship, which
is the basis for its unjust enrichment counterclaim, in a
Susquehanna branch in Maryland. *See* ECF No. 166 at 13.
Maryland choice-of-law rules govern this action. *See Klaxon v.
Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S. Ct. 1020, 85 L.
Ed. 1477 (1941). Because all the acts that underlie these
unjust enrichment counterclaims occurred in Maryland, these
counterclaims are governed by Maryland law. *See RaceRedi
Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666
(D. Md. 2009).

circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 936 A.2d 343, 351 (2007).

### a. Spring Glen's Counterclaim

Spring Glen alleges that it contracted with Legacy to collect assessments from its community members and to hold the "funds in trust to pay for the operation and future maintenance of the community." ECF No. 105 at 21. Legacy deposited almost $8,000 of Spring Glen's funds into the investment account commingled with Legacy's funds and the funds of other HOAs. *See id.* Legacy's contract with Spring Glen prohibited commingling Spring Glen's funds with those "from any other source, including other clients." *Id.* at 22. After Susquehanna froze the account, neither Spring Glen, nor Legacy,[44] could access Spring Glen's funds. *See id.* at 19-20.

Spring Glen alleges that Susquehanna is retaining Spring Glen's funds, to which Susquehanna has "no legal or equitable claim," in the investment account "for their own enrichment to the detriment of Spring Glen." *Id.* at 23-24. Susquehanna

---

[44] Susquehanna contends it could not have released the funds to Legacy, because: (1) it was "not the registered owner of the Investment Account;" (2) it could not "provide an accurate and reliable accounting of the claims to the Investment Account;" and (3) it "fraudulently altered" Susquehanna bank statements. ECF No. 131-1 at 1-2.

contends that, by "instituting the interpleader action," it "has asserted that it does not have an ownership interest in the" investment account. ECF No. 131-1 at 3. Accordingly, Susquehanna "has made no attempt to retain any funds to the detriment of Spring Glen." *Id.* at 4.

"To sustain an unjust enrichment claim, a plaintiff must have provided an actual benefit to the defendant,"[45] or the defendant must have "obtain[ed] and fail[ed] to return funds or property that belongs to the plaintiff."[46] "[M]erely alleging one's own loss is not enough." *Kline v. Signet Bank,* 102 Md. App. 727, 733, 651 A.2d 442 (Md. Spec. App. 1995). Assuming that Spring Glen has conferred a benefit on Susquehanna by the presence of Spring Glen's funds in the investment account, Spring Glen has not alleged facts showing that Susquehanna's current retention of its funds is unjust.[47] Spring Glen alleges

---

[45] *Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000) *aff'd sub nom. Froelich v. Senior Campus Living, LLC,* 5 F. App'x 287 (4th Cir. 2001).

[46] *See Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F. Supp. 2d 700, 708-09 (D. Md. 2001) (*citing Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237 (1966)).

[47] In *Plitt*, the Maryland Court of Appeals held that the plaintiff established a claim of unjust enrichment when the defendant received plaintiff's funds because of a fraudulent endorsement of plaintiff's check *and would not return the money. See* 242 Md. at 368-70. Here, Susquehanna is attempting to return the money through this interpleader action once its true owners are determined. *See* ECF No. 131-1 at 3-4. Thus, although Susquehanna is currently retaining funds that may

27

that Susquehanna has been "enrich[ed]" by Spring Glen's funds,

ECF No. 105 at 23, but it does not explain how Susquehanna has

benefitted,[48] especially in light of Susquehanna's institution of

this interpleader action to disburse the investment account

funds to their true owners.[49]  *See* ECF No. 131-1 at 3-4.

---

belong to Spring Glen, the retention is not unjust because it is only temporary. *Cf.* Md. Code Ann., Fin. Inst. § 5-306 (West 1980) ("[A] banking institution is not required to recognize or take any action on any claim to a deposit or to money or property held by it or contained in a safe-deposit box, if that claim is adverse to the interests of any person who, on its records, appears to be entitled to the deposit, money, or property.").

[48] Maryland courts have denied unjust enrichment recovery in cases when subcontractors sue the owners of buildings that benefitted from work the subcontractors did, but for which they were not paid by the general contractors. *See, e.g.*, *Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland*, 342 Md. 169, 181-82, 674 A.2d 534, 540 (1996). As partial support for their holdings, these cases note that "'a third party is not *unjustly* enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties.'" *Id.*; *see also Richard F. Kline, Inc. v. Signet Bank/Maryland*, 102 Md. App. 727, 733-34, 651 A.2d 442, 445 (1995). Although this case arises in a different context, Susquehanna similarly did not request that Legacy deposit Spring Glen's funds in the investment account or mislead anyone about the funds' ownership. *See* ECF No. 131-1 at 3-4. Thus, this line of cases strengthens Susquehanna's position that it was not unjustly enriched by the funds Legacy deposited in the investment account pursuant to its contracts with the HOAs.

[49] Only counterclaims that are "truly independent of who [is] entitled" to the disputed funds may be brought in interpleader actions. *See Prudential*, 553 F.3d at 264-65 (holding that interpleader actions protect the stakeholder from "claims to the stake"); *see also J.G. Wentworth Originations, LLC v. Mobley*, 11-CV-1406, 2012 WL 4922862, at *7 (D. Md. Oct. 12, 2012)

Accordingly, Spring Glen has failed to state an unjust enrichment claim, and Susquehanna's motion to dismiss will be granted. *See Iqbal*, 556 U.S. at 678 (the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### b. Hilltop's Counterclaim

Hilltop alleges that it hired Legacy to serve as its property manager--their contract prohibited Legacy from commingling Hilltop's funds with those of any other source. ECF No. 166 at 12. Legacy, without Hilltop's authorization, moved Hilltop's reserve funds, along with those of several other HOAs, to accounts at the Bank. *Id.* at 16. Once all the funds were moved, Legacy made several improper transfers of funds between the HOA accounts, accounts of Legacy's related entities, and the investment account. *Id.* Hilltop contends that these transfers, in addition to other "suspicious" actions by Francis, should have alerted the Bank to the possibility of fraud and prompted the Bank to immediately investigate and shut down Francis's activities. *See id.* at 16-17. Instead, the Bank continued its banking relationship with Francis for several weeks after it had "actual knowledge of Mr. Francis's fraudulent activities." *See id.* at 17-18.

(dismissing counterclaim because it "simply repackages" the claimant's claim to the stake).

Hilltop contends that STIC "is currently in possession of certain Reserve Funds belonging to Hilltop" to which "STIC has no legal or equitable claim." *Id.* at 20. It requests "judgment awarding it the funds belonging to Hilltop contained within the STIC account." *Id.* Susquehanna asserts that Hilltop has failed to state an unjust enrichment claim, because Hilltop has not alleged that STIC "accept[ed] or [retained] a benefit from Hilltop." ECF No. 191-1 at 13.

Although Hilltop has alleged that the Bank should have acted to stop Francis's activities earlier, *see* ECF No. 166 at 17-18, Hilltop has not alleged that Susquehanna's current retention of Hilltop's funds in the investment account is inequitable.[50] As discussed above, Susquehanna does not seek to retain any of the funds in the investment account once their true owners have been judicially determined.[51] Accordingly,

---

[50] Susquehanna asserts that Hilltop never alleged that the investment account contained any of Hilltop's assets. *See* ECF No. 212 at 6. Although Hilltop never directly alleged that the investment account contains its funds, it asserted that Legacy had control over its reserve funds, and Legacy transferred $1.2 million in reserve funds from various HOAs into the investment account. *See* ECF No. 166 at 16. Given that discovery has not yet occurred, ECF No. 209 at 6, and viewed in the light most favorable to Hilltop, these allegations are sufficient for the Court to infer that the investment account may contain funds belonging to Hilltop.

[51] Hilltop contends that the interpleader action does not bar its unjust enrichment counterclaim, because "STIC has not deposited the funds at issue into the Court's registry, as required under 28 U.S.C. § 1335(a)(2)." ECF No. 209 at 7. Susquehanna has

30

Hilltop has failed to allege that Susquehanna has been unjustly enriched, and Susquehanna's motion to dismiss this counterclaim will be granted.[52]

>    3. Bad Faith Conduct with Respect to a Fiduciary
>       Relationship Counterclaims Against Susquehanna

The Uniform Fiduciaries Act ("UFA"), which Maryland has adopted,[53] eliminated common law negligence liability for banks dealing with fiduciaries that breach their fiduciary duties.[54] Under the UFA, a bank may only be liable to a principal for conduct arising out of the bank's relationship with the fiduciary, if the bank has "actual knowledge that the fiduciary

---

moved for a court order to deposit the funds, ECF Nos. 178-79, and the Court will grant this motion. Accordingly, Susquehanna has adequately demonstrated that it does not intend to retain any of the funds in the investment account.

[52] *See also Prudential*, 553 F.3d at 264-65; *Daniels v. Equitable Life Assurance Soc. of the U.S.*, 35 F.3d 210, 214-15 (5th Cir. 1994) ("When an interpleader is properly asserted, counterclaims seeking payment of the interpleaded funds are disallowed.").

[53] Md. Code Ann., Est. & Trusts § 15-201 *et seq.* (West 1974). Both parties bring their counterclaims under Maryland law, ECF Nos. 148 at 51, 166 at 21, and Susquehanna does not contend that any other law applies, *see, e.g.*, ECF No. 161-1 at 6.

[54] *See Farmers Banking & Trust Co. of Montgomery Cnty. v. Bender*, 175 Md. 625, 629-30, 3 A.2d 743, 745 (1939); *Provident Bank of Maryland v. DeChiaro Ltd. P'ship*, 98 Md. App. 596, 605, 634 A.2d 973, 978 (1993) ("Basically, the [UFA] was enacted to protect those who deal in good faith with a fiduciary."); *Nat'l Grange Mut. Ins. Co. v. Verizon's Benefits Ctr.*, 541 F. Supp. 2d 745, 750 (D. Md. 2008); *Maryland Cas. Co. v. Bank of Charlotte*, 340 F.2d 550, 553 (4th Cir. 1965) ("At common law a payee was often held liable to the principal if it negligently assisted a fiduciary in misappropriating the principal's funds.").

is committing a breach of his obligation as a fiduciary in making the deposit or in drawing the check," or acts "with knowledge of the facts that its action in receiving the deposit or paying the check amounts to bad faith." § 15-208. A bank has no affirmative obligation "to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary." *Id.* A bank acts with "bad faith" if it acts dishonestly--mere negligence does not qualify. *Provident*, 98 Md. App. at 609, 634 A.2d at 978.

### a. Kings Council's Counterclaim

Kings Council alleges that Francis was a fiduciary of his HOA clients, including the Kings Council claimants. ECF No. 148 at 31. In August 2011, with the permission of some HOAs but not others, he moved all of his clients' reserve funds to accounts at Susquehanna. *See id.* at 31-32. Patrice Harold, an employee of the Bank, helped Francis set up accounts for Legacy and its related entities. *Id.* at 32-33. "When opening a bank account for an entity, the Bank required that . . . the secretary of the corporation[,] or agent of the limited liability company[,] sign a corporate authorization resolution listing the powers granted to the entity's agents with respect to the account." *Id.* at 33. The resolution also had to be "countersigned by 'one other officer' of the entity." *Id.* Francis, and his assistant Danielle Candela, signed the resolution on behalf of each HOA.

*Id.* at 33-34. Kings Council asserts that this should have alerted Susquehanna to the possibility that Legacy was engaged in fraudulent conduct, because: (1) documents provided to the Bank by Francis "show that membership in the HOAs was typically limited to persons who own units or lots in the associations, and many documents provided to the Bank were signed by the actual secretaries of the HOAs;" (2) copies of the contracts between Francis and the HOAs provided to the Bank by Francis designated Legacy as the HOAs' "agent," and did not designate Francis as an officer; (3) Harold knew that Candela was Francis's assistant; and (4) the Bank could not have believed in good faith that "each HOA had made Ms. Candela an officer prior to or simultaneously with making Mr. Francis an officer."[55] *See id.* at 35-36.

Kings Council also asserts that Francis's account activity "would have prompted any bank acting in good faith to have investigated further," because Susquehanna knew Francis was making large transfers of the HOAs' protected reserve funds between HOA accounts and those assigned to entities solely owned by Francis. *See id.* at 36, 39. Many of those entities were businesses which had nothing to do with property management. *Id.* at 37. In addition, in "late June 2012 or early July 2012,"

---

[55] Kings Council asserts that the Bank knew Francis's actions were fraudulent, or were "willful[ly] blind[]" to the possibility. ECF No. 148 at 37.

an accountant for several of the HOAs informed Susquehanna of Legacy's use of fraudulent bank statements. *Id.* at 39-40. After speaking to this accountant, "the Bank had actual knowledge that Mr. Francis and the Legacy Entities were systematically looting the HOA Reserve Funds, breaching their fiduciary duties . . . defrauding the HOA parties, and committing various criminal acts in the process." *Id.* at 40. "Rather than freeze all account activity and alert the appropriate authorities to Mr. Francis's criminal conduct, the Bank continued to view Mr. Francis as a source of business . . . [and entered] into a [LOC] transaction with Mr. Francis for its own benefit." *Id.* at 41. This LOC transaction was secured by funds the Bank knew belonged to the HOAs. *Id.* at 41.

Kings Council alleges that, "by virtue" of the UFA, Susquehanna "owe[d] a duty to [it] to act in good faith with respect to the fiduciary relationship" between itself and Legacy. *Id.* at 51. It alleges that Susquehanna "ignored irregularities" in Legacy's banking transactions, and "failed to take meaningful action to prevent further depletion" of the reserved funds, despite the "compelling and obvious" misconduct of Legacy. *Id.* It also asserts that Susquehanna "deliberately desired to evade knowledge" of Legacy's and Francis's criminal activities and had "actual knowledge of Mr. Francis's intentions to misappropriate" the HOAs' reserve funds. *Id.* at 52. As a

result, Kings Council "lost millions of dollars in reserve funds." *Id.* Kings Council requests compensatory damages of at least $3 million and punitive damages of $10 million. *Id.*

### i. Cause of Action

Susquehanna asserts that the UFA does not expressly or implicitly "create a private right of action," but instead "*shield[s]* from tort liability entities relying on an individual's status as a fiduciary." ECF No. 161-1 at 6-7. Kings Council contends that the UFA modified a bank's common law liability for negligence in dealing with a fiduciary that breached a duty to its principal--it did not create a private right of action, because one already existed. *See* ECF No. 169 at 13-14. Instead, the UFA created a defense to liability for a bank which dealt in good faith with the fiduciary without actual knowledge of the fiduciary's breach. *See id.* at 14-15.

At common law, a bank could be liable in negligence to a principal when the bank participated in a transaction with a fiduciary in which the fiduciary breached its duty to the principal. *See Swift v. Williams*, 68 Md. 236, 11 A. 835, 840 (1888); *see also Maryland Casualty*, 340 F.2d at 553. The UFA "did away with the payee's liability for negligence and substituted a new test," which required bad faith or actual knowledge of a breach for liability. *Maryland Casualty*, 340 F.2d at 553. Accordingly, as Kings Council asserts, the UFA did

35

not create a cause of action but instead modified liability that existed at common law by creating a good faith defense. *See Appley v. W.*, 832 F.2d 1021, 1031 (7th Cir. 1987).[56] Thus, Kings Council has correctly asserted that Susquehanna can be liable to a principal if it acted in bad faith, or with actual knowledge of a breach, in dealing with a fiduciary.[57]

Viewing the facts in the light most favorable to Kings Council, it has alleged that Susquehanna continued its banking relationship with Francis despite its actual knowledge of Francis's breaches of duty.[58] *See* ECF No. 169 at 17. Kings

---

[56] *See also Farmers Banking*, 175 Md. at 629-30, 3 A.2d at 745 ("'The general purpose of the Act is to establish uniform and definite rules in place of the diverse and indefinite rules now prevailing as to 'constructive notice' of breaches of fiduciary obligations. In some cases there should be no liability in the absence of actual knowledge or bad faith; in others there should be action at peril. In none of the situations here treated is the standard of due care or negligence made the test.'").

[57] *See Provident*, 98 Md. App. at 608("If a check is drawn upon the account of his principal in a bank by a fiduciary . . . the bank is authorized to pay the check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation . . . , or with knowledge of the facts that its action in paying the check amounts to bad faith.").

[58] Susquehanna does not dispute that "Francis and the Legacy Entities were fiduciaries of the Kings Council Interpleader Claimants." *See* ECF No. 161-1 at 3. Kings Council has alleged that Susquehanna had knowledge that Legacy had been appointed the HOAs' agent, and Francis had opened the accounts as each HOA's secretary. ECF No. 148 at 35. Thus, Kings Council has alleged that Susquehanna knew Legacy was the HOAs' fiduciary from the time Legacy opened accounts on their behalf. *See id;*

Council alleges that Francis's irregular banking activity, coupled with his improper method of opening accounts at Susquehanna, gave Susquehanna actual knowledge that Legacy was breaching its fiduciary duties to the HOAs.[59]  *See* ECF No. 148 at 32-39.  In addition, Susquehanna had actual knowledge that Legacy was giving its HOA customers fraudulent bank statements, yet continued to transact with Legacy for at least some time afterwards. *See id.* at 39-42.  Thus, Kings Council has stated a claim under the UFA that Susquehanna had actual knowledge of Legacy's breach of duty some time before it ended its banking relationship with Legacy.  *See* ECF No. 169 at 8-9.

Kings Council has also alleged that Susquehanna acted in bad faith.  *See* ECF No. 169 at 17.  It alleges that Susquehanna "deliberately desired to evade knowledge" of Legacy's criminal activities, which resulted in the loss of millions of dollars in HOA reserve funds.  *Id.* at 52.  Kings Council's allegations that

---

UFA, § 15-201 (defining "fiduciary" to include an "agent" and an "officer of a corporation.").

[59] Several courts construing the UFA have held that "actual knowledge" requires "express factual information" that shows the fiduciary is misappropriating funds. *See, e.g.*, *Maryland Casualty*, 340 F.2d at 553; *Master Chem. Corp. v. Inkrott*, 55 Ohio St. 3d 23, 28, 563 N.E.2d 26, 30 (1990).  Assuming Maryland courts would hold similarly, Kings Council has alleged several express facts--including specific banking activity and Francis's designation of himself as each HOA's secretary--that allegedly gave Susquehanna actual knowledge that Francis was misappropriating funds.

Susquehanna knew Legacy was misappropriating HOA funds establish Susquehanna's "knowledge of facts" that continuing to honor Legacy's deposits and electronic transfers, and entering into a LOC transaction with Legacy secured by HOA funds, was "dishonest." *See Provident*, 98 Md. App. at 609-10, 634 A.2d at 980; ECF No. 169 at 8-9. Thus, Kings Council has stated a claim that Susquehanna acted in bad faith under the UFA. *See Provident*, 98 Md. App. at 609, 634 A.2d at 978. Susquehanna's motion to dismiss will be denied.

### ii. Claim against STIC

Susquehanna contends that Kings Council has not "allege[d] any damages caused by STIC," a required component of a tort claim. ECF No. 161-1 at 9. According to Susquehanna, Kings Council alleged that $1.2 million was transferred into the investment account and that same amount "remains in the STIC account today." *Id.* at 9-10. Kings Council asserts that STIC had actual knowledge that Francis "intended to consolidate approximately $4 million of the HOA's Reserve Funds into a single investment account," but Francis only deposited $1.2 million. ECF No. 148 at 37-38. Viewing this allegation in the light most favorable to Kings Council, Kings Council appears to allege that this was an "irregularit[y]" in Legacy's transactions that STIC failed to prevent which resulted in

"further depletion of" the HOAs' funds. *See id.* at 51-52.
Thus, Kings Council has stated a claim for damages against STIC.

### iii. Punitive Damages

Susquehanna asserts that the UFA does not authorize
punitive damages, and "[w]here a Maryland statute creates a
private right of action," but does not authorize punitive
damages, those damages are not recoverable." ECF No. 161-1 at
10-11. Even if Kings Council's counterclaim "arises in tort,"
Kings Council has not alleged that Susquehanna "acted with
actual malice," and so cannot recover punitive damages. *Id.* at
11. Kings Council asserts that it alleged that Susquehanna
acted with actual malice. ECF No. 169 at 19.

As discussed above, Kings Council's counterclaim sounds in
tort.[60] Under Maryland law, "to recover damages in *any* tort
action . . . facts sufficient to show *actual malice* must be
pleaded and proven by clear and convincing evidence[.]" *French
v. Hines,* 182 Md. App. 201, 957 A.2d 1000, 1027
(Md.Ct.Spec.App.2008) (*quoting Scott v. Jenkins,* 345 Md. 21, 690
A.2d 1000, 1003-04 (Md. 1997)) (emphasis in original). "Actual
malice" requires "conduct motivated by ill will, fraud, intent
to injure, or other *mens rea* exhibiting an evil motive or
purpose[.]" *Id.* In most tort actions, "Maryland law has
limited the availability of punitive damages to situations in

---

[60] *See supra* Section II.D.3.a.i.

39

which the defendant's conduct is characterized by knowing and deliberate wrongdoing." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 150 Md. App. 18, 28, 818 A.2d 1159, 1165 (2003) *aff'd*, 379 Md. 249, 841 A.2d 828 (2004); *see also Montgomery Ward v. Wilson*, 339 Md. 701, 730, 664 A.2d 916, 930 (1995).

Kings Council alleges that Susquehanna's "conduct was characterized by ill will, recklessness, [and] willful disregard of the rights of" the Kings Council claimants. ECF No. 148 at 52. Beyond this single conclusionary statement, Kings Council has not alleged specific facts that support its claim to punitive damages. Kings Council alleges that Susquehanna is liable for failing to address Legacy's wrongdoing, *see, e.g.*, *id.*, but its alleged facts do not suggest that Susquehanna deliberately engaged in illegal conduct, committed fraud, or intended to cause injury. Accordingly, the Court will grant Susquehanna's motion to dismiss Kings Council's claim for punitive damages. *See Iqbal*, 556 U.S. at 678 (the plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'").

### b. Hilltop's Counterclaim

Hilltop recites virtually the same allegations as Kings Council in support of its counterclaim against Susquehanna-- Legacy's irregular banking transactions, improper method of setting up accounts, and use of fraudulent statements gave

Susquehanna actual knowledge that Legacy breached his fiduciary duty to Hilltop and the other HOAs. *See* ECF No. 166 at 13-17. Despite Susquehanna's knowledge of Legacy's misappropriations of HOA funds, it continued its banking relationship with Legacy, which amounted to bad faith. *See id.* at 21. Hilltop requests at least $30,000 in compensatory damages and $100,000 in punitive damages. *Id.* at 22. Like Kings Council, Hilltop does not allege any facts that demonstrate its entitlement to punitive damages. *See, e.g., id.* at 21-22. Susquehanna moves to dismiss Hilltop's counterclaim on the same grounds as it did for Kings Council. *See* ECF No. 191. Accordingly, the Court will deny Susquehanna's motion to dismiss Hilltop's counterclaim, and grant its motion to dismiss the claim for punitive damages.

III. Conclusion

For the reasons stated above: (1) the defendants' motion to liquidate the investment account will be granted in part and denied in part; (2) the defendants' motion to dismiss Legacy's claims for failure to obey a court order will be granted, and defendants' motion to dismiss Legacy's claims for failure to prosecute will be denied as moot; (3) the defendants' motion to dismiss Kings Council's counterclaim will be granted in part and denied in part; (4) Kings Council's motion to file a surreply will be denied; (5) the defendants' motion to dismiss Hilltop's

counterclaims will be granted in part and denied part; and (6) the defendants' motion to dismiss Spring Glen's counterclaim will be granted.

___9/26/13___
Date

_____
William D. Quarles, Jr.
United States District Judge