IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| LEGACY INVESTMENT AND MANAGEMENT, LLC | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-12-2877 |
| SUSQUEHANNA BANK *et al.*, | * |
| Defendants/Counter-claimants/Third Party Plaintiffs/Third Party Counterclaim Defendants | * |
| v. | * |
| LEGACY INVESTMENT AND MANAGEMENT, INC. *et al.*, | * |
| Third Party Defendants/ Fourth Party Claimants | * |
| v. | * |
| KENNEDY COMPOUND, LLC, *et al.*, | * |
| Fourth Party Defendants | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Legacy Investment and Management, LLC ("Legacy LLC") sued Susquehanna Bank ("the Bank") and Susquehanna Trust and Investment Company ("STIC"), (together "Susquehanna"), in the Circuit Court for Baltimore County, Maryland, for breach of contract and unjust enrichment. ECF No. 2 at 1, 14-15.

Susquehanna removed to this Court. ECF No. 1. The Bank counterclaimed against Legacy LLC for trademark infringement and other claims.[1] ECF No. 16 at 20-40. Pending is Susquehanna's unopposed motion for default judgment on the trademark infringement claim.[2] ECF No. 250. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, default judgment will be granted.

I. Background[3]

Francis, through several of his wholly-owned businesses including Legacy LLC and Legacy Inc. (together, the "Legacy entities"), managed properties for Homeowner Associations ("HOAs") located in the Baltimore and Washington, DC metropolitan areas. ECF No. 16 at 27. Francis is the sole member of Legacy LLC and the chief executive officer of Legacy

---

[1] The Bank also brings its trademark infringement claim against Legacy Investment and Management, Inc. ("Legacy Inc.") and William Kyndall Francis. ECF No. 16 at 38. This opinion refers to Legacy Inc., Legacy LLC, and Francis collectively as "the defendants."

[2] Susquehanna also moved for dismissal of Legacy LLC's claims against it because of Legacy LLC's failure to prosecute. ECF No. 250. In a previous opinion this motion was denied as moot, because the Court granted Susquehanna's motion to dismiss Legacy LLC's claims for failure to obey a court order. *See* ECF No. 260 at 20-23 & n.41.

[3] In reviewing a motion for entry of a default judgment, the plaintiff's well-pled allegations as to liability are accepted as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).

Inc. *Id.* at 39. In 2011, Francis and the Legacy entities opened more than 80 deposit accounts at the Bank in the names of about 40 of the Legacy entities and 40 HOAs. *Id.* at 21, 27. The HOA deposit accounts contained protected capital reserve funds owned by the individual HOAs and were established under each HOA's name "care of [Legacy LLC]." *Id.* at 21, 28 (internal quotations omitted). Francis, and the Legacy entities, had the ability to transfer funds between these accounts. *See id.* at 28, 34.

When Francis initially opened the deposit accounts at the Bank, he informed Susquehanna employees that he wanted to invest the HOAs' reserve funds to obtain a higher rate of return for the HOAs. *Id.* at 29. STIC employees recommended aggregating the HOAs' capital reserve accounts in an investment account to earn more interest than the individual accounts.[4] *Id.* In October 2011, Francis--through Legacy Inc.--opened an investment account at STIC substantially or fully funded by the capital reserves of several HOAs. *See* ECF No. 16 at 21, 30-31. About $1.2 million was ultimately deposited in the investment account. *See id.* at 30.

When the investment account was created, STIC offered sub-account reporting services to Francis to track which funds

---

[4] Investment account funds are invested in illiquid financial instruments, so withdrawals from the accounts require three business days to process. *See* ECF No. 16 at 29.

3

belonged to which HOAs, but Francis declined the service and told STIC that the Legacy entities would track the funds' ownership internally. *Id.* at 30.

In August 2012, the Bank was contacted by an HOA engaged in an internal audit to verify the existence of the HOA's deposit account. *Id.* at 32. Susquehanna told the HOA that the account number it provided did not exist. *Id.* The HOA's accountant examined the bank statement provided to the HOA by the Legacy entities and detected "significant differences" between it and Susquehanna's normal statement format. *Id.* at 33. The accountant forwarded the statement to Susquehanna, and the Bank discovered that: (1) the account number had been altered; (2) a Susquehanna logo had been added to the statement;[5] and (3) the amount of funds, rate of interest, and the statement period had been altered.[6] *Id.* The Bank soon learned that the Legacy entities--under Francis's direction and approval--had also sent

---

[5] Susquehanna's parent company owns U.S. "Trademark Registration No. 3071958, which mark consists of the word mark 'Susquehanna' plus a star design" (the "Trademark"). ECF No. 16 at 38. The Bank is an authorized user of this trademark; Francis and the Legacy entities are not authorized users. *See id.*

[6] Susquehanna attached a copy of a falsified bank statement and a copy of a genuine bank statement to its counterclaim. *See* ECF Nos. 16 at 33, 16-1 at 32, 34.

4

several other HOAs falsified bank statements.[7] *Id.* at 34, 39. The Bank also discovered that the Legacy entities had made several transfers "between deposit accounts held for the HOAs at the Bank." *Id.* at 34. Susquehanna believed that these transfers were improper, unauthorized by the HOAs, and done to cover-up the Legacy entities' use of false account statements. *Id.* Susquehanna revoked the Legacy entities' access to the HOAs' deposit accounts. *Id.*

In September 2012, Susquehanna met with Francis and his counsel to attempt to obtain an accurate accounting of the investment account. *Id.* Francis only offered oral assurances that Legacy was properly accounting for the funds in the account and that they would not be subject to multiple claims. *Id.* at 35. Susquehanna did not find these assurances sufficient and froze the account. *See id.* at 16 at 34-35.

On September 24, 2012, Legacy LLC sued Susquehanna in the Circuit Court for Baltimore County, Maryland, alleging breach of contract and unjust enrichment. ECF No. 2 at 14-15. It also sought injunctive relief to restore its access to the HOA deposit accounts and the investment account. *Id.* at 10-14. On September 26, 2012, Susquehanna removed to this Court on the

---

[7] By these actions, the Bank asserts that it has suffered "irreparable damage to its business, goodwill and reputation." ECF No. 16 at 39.

5

basis of diversity jurisdiction.[8] ECF No. 1. On October 5, 2012, Susquehanna answered Legacy LLC's complaint, and the Bank counterclaimed for breach of contract (counts two and three), and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 (count four).[9] ECF No. 16 at 36-39. The Bank also asserted the trademark infringement claim against third party defendants Legacy Inc. and Francis.[10] *Id.* at 38. The Bank sought a permanent injunction against the defendants to prohibit them from any future unauthorized use of the Trademark. *See id.* at 39.

On October 24, 2012, the Court sent James A. List, Legacy LLC's counsel of record on its complaint, a letter asking if he or another attorney intended to enter an appearance on behalf of Legacy LLC. ECF No. 70. On October 25, 2012, List informed the Court by letter that he would not enter an appearance, and he did not know if another attorney would appear. ECF No. 72. The

---

[8] A Limited Liability Company has the citizenship of its members for diversity purposes. *Cent. W. Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Legacy LLC's sole member, Francis, is a citizen of Maryland. ECF No. 16 at 22. Susquehanna's state of incorporation and its principal place of business are Pennsylvania. ECF No. 67 at 3.

[9] STIC also brought an interpleader action to determine the ownership of the funds in the investment account. ECF No. 16 at 1-2, 35-36.

[10] Legacy Inc. was served with the third party complaint on December 5, 2012, and Francis was served on January 15, 2013. ECF Nos. 96 at 1; 111; 113 at 1.

Court then twice ordered Legacy LLC by letter to "have new counsel enter an appearance or be subject to dismissal of its claims." ECF No. 82 (November 14, 2012), ECF No. 86 (November 29, 2012). Legacy LLC did not respond to the letters, enter an appearance of counsel, or otherwise participate in the case.[11]

On February 6, 2013, Susquehanna moved for entry of default against Legacy Inc. and Legacy LLC. ECF No. 119. On February 8, 2013, Susquehanna moved for entry of default against Francis. ECF No. 121. On February 22, 2013, default was entered against Francis. ECF No. 136. On March 8, 2013, default was entered against Legacy Inc. and Legacy LLC. ECF No. 150. On July 31, 2013, Susquehanna moved for a default judgment and permanent injunction against the defendants on its trademark infringement claim. ECF Nos. 250, 250-1 at 6. The defendants have not opposed the motion or the clerk's entry of default against them.

II. Analysis

A. Standard of Review

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. In reviewing a motion for

---

[11] The letters were sent to different addresses--the address listed for Legacy LLC on its complaint and a post office box in the name of Legacy LLC--and were returned as undeliverable. ECF Nos. 85, 103. On September 26, 2013, the Court dismissed Legacy LLC's claims for failure to obey a court order. ECF Nos. 260 at 20-23; 261.

entry of a default judgment, the plaintiff's well-pled allegations are accepted as true as to liability. *Ryan*, 253 F.3d at 780-81. However, the court must determine whether these unchallenged factual allegations demonstrate a legitimate cause of action. *Id.* "[A] defaulting defendant is not held to admit conclusions of law." *United States v. $3,500.00 in U.S. Currency*, 2008 WL 215807, at *1 (E.D.N.C. Jan.24, 2008) (*citing Ryan*, 253 F.3d at 780). Rather, it remains for the court to determine whether the unchallenged factual allegations "support a claim and the relief sought." *Id.*

The entry of a default judgment is left to the court's discretion, and the Fourth Circuit has a "strong policy" that "cases be decided on the merits." *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002) (*citing United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). However, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (*quoting SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (internal quotations omitted)).

B. Trademark Infringement

To prevail on its Lanham Act claim, the Bank must prove that (1) it owns a valid mark, (2) the defendants "used the mark in commerce and without [the Bank's] authorization," (3) the

defendants "used the mark (or an imitation of it) in connection with the sale, offering for sale, distribution, or advertising of goods or services," and (4) the defendants' use of the mark "is likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (citing § 1114(1)(a)); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 933 (4th Cir. 1995) ("[A]n unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods.") (internal quotations omitted).

Registration of a trademark is *prima facie* evidence that the registrant owns the trademark, and it is valid. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002). The Bank asserts that its parent company owns the Trademark, registration number 3071958. ECF No. 16 at 38. Thus, the Bank has shown that it owns the Trademark, and it is valid.

The Bank also contends that the defendants used the Trademark on falsified Bank statements for deposit accounts that the defendants managed on behalf of their HOA customers in the regular course of their business, and that the defendants lacked authorization for such use of the Trademark. *See* ECF No. 16 at 27, 34, 38; *see also* ECF No. 16-1 at 32 (falsified account

statement). This is sufficient to show that the defendants used the mark "in commerce," without authorization, and "in connection with the sale, offering for sale, distribution, or advertising of goods or services." *Rosetta Stone*, 676 F.3d at 152; *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001) (noting that, to use a trademark "in connection with" goods or services, the defendant "need only have connected the website [on which the mark was used] to other's goods or services").[12]

Finally, when a defendant intentionally copies the plaintiff's trademark to exploit the trademark's goodwill, likelihood of confusion may be presumed. *See Larsen v. Terk Technologies Corp.*, 151 F.3d 140, 149 (4th Cir. 1998) (*citing M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 448 (4th Cir. 1986)); *Rosetta Stone*, 676 F.3d at 160 n.5. Here, the Bank asserts that, at the direction and with the authorization of Francis, the Legacy entities deliberately copied the Trademark

---

[12] *See also, e.g., Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, CIV.A. RDB-12-1970, 2013 WL 3832447, at *4 (D. Md. July 23, 2013) (elements two and three satisfied by showing that defendants used the plaintiff's mark "in the course of business" on their websites); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F. Supp. 2d 612, 616, 619 (E.D. Va. 2002) (elements two and three satisfied by showing that defendants used plaintiff's mark on defendants' websites in connection with "travel information services posted on those sites").

onto falsified account statements and, as a result, deceived its HOA customers that the false statements were from the Bank. *See* ECF No. 16 at 33-34. Thus, the Bank is entitled to a presumption that the defendants' actions caused a likelihood of confusion. *Cf. Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (When "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

Accordingly, because the Bank has established that the defendants infringed the Trademark, the Bank will be granted default judgment on the issue of the defendants' liability for Lanham Act trademark infringement.

C. Permanent Injunction

Under the Lanham Act, a district court may grant injunctive relief to prevent further infringement of the plaintiff's trademark rights. *See Innovative Value Corp. v. Bluestone Fin., LLC*, CIVA DKC 2009-0111, 2009 WL 3348231, at *2 (D. Md. Oct. 15, 2009) (*citing* 15 U.S.C. § 1116). When the district court grants default judgment on a trademark infringement claim, it may also grant a permanent injunction. *See id.; Mary Kay Inc. v. Ayres*, 827 F. Supp. 2d 584, 595 (D.S.C. 2011). To obtain a permanent injunction, the plaintiff must show: "1) it has suffered an irreparable injury; (2) remedies available at law are

inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction." *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (*citing eBay, Inc. v. MercExchange*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006)).

Here, the Bank asserts that the defendants' infringing acts harmed its "business, goodwill and reputation." ECF No. 16 at 39. This is sufficient to show irreparable injury. *See Lone Star*, 43 F.3d at 939 (noting that "irreparable injury regularly follows from trademark infringement"); *Entrepreneur Media*, 2013 WL 3832447, at *6 ("[D]amage to a business's reputation and goodwill may fairly be characterized as 'irreparable' in nature.") (*quoting Innovative Value*, 2009 WL 3348231, at *3 (internal quotations omitted)). Further, when--as here--the defendants do not appear or participate in litigation, "further infringement is a continuing threat, making remedies at law insufficient to compensate for Plaintiff['s] injuries." *See Innovative Value*, 2009 WL 3348231, at *3.

The Bank has also shown that the balance of hardships tips in its favor, because the defendants infringed the Trademark in violation of the Lanham Act to deceive their HOA customers. *See PBM Products*, 639 F.3d at 127 (balance of hardships favored plaintiff because defendant "simply has no equitable interest in

perpetuating . . . false and misleading claims" in its advertisements); *Entrepreneur Media*, 2013 WL 3832447, at *6 (balance of hardships favored plaintiff when defendants were "operating their business in direct violation of the Lanham Act"). Finally, the public interest would be served by a permanent injunction, because "there is greater public benefit in securing the integrity of [a] Plaintiffs' mark than in allowing [a] Defendant to continue to use the mark in violation of [that] Plaintiffs' rights." *Innovative Value*, 2009 WL 3348231, at *3. Accordingly, the Bank will be granted permanent injunctive relief against the defendants' further infringement of the Trademark.

III. Conclusion

For the reasons stated above, Susquehanna's motion for a default judgment and a permanent injunction will be granted.

2/27/14
Date

William D. Quarles, Jr.
United States District Judge