IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEGACY INVESTMENT AND      *
MANAGEMENT, LLC,

     *

     Plaintiff,

     *      Civil No. WDQ-12-2877

v.

     *

SUSQUEHANNA BANK, *et al.*,

     *

     Defendants.

     *     *     *     *     *     *

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion By Certain Kings Council Claimants for Entry of Default Judgments[1] ("the Motion") (ECF No. 329) filed by Cross-Claim and Fourth-Party Counterclaim Plaintiffs, Burns Street Tenants Association, Inc.; Council of Unit Owners of Kings Council Condominium; Frankford Estates Homeowners Association, Inc.; The Council of Unit Owners of the Gardens at Owings Mills I; The Council of Unit Owners of the Gardens at Owings Mills II; The Crossing at Chaddsford Homeowners Association, Inc.; and The Olney Towne Association, Inc. (collectively, "Plaintiffs") against William K. Francis ("Mr. Francis"); Legacy Investment & Management, Inc. ("Legacy, Inc."); Legacy Investment and Management, LLC ("Legacy LLC"); Gorgeous Prince George's LLC d/b/a The Grounds Guy-Prince George's County; Kennedy Compound, LLC; Epitome Properties, LLC; Global Acquisitions Management Enterprises, Inc. d/b/a Game Janitorial ("Game Janitorial"); Iconic Corporate Leasing, LLC; JobsGatesZuck Realty, LLC; Legacy Investment & Management –

---

[1] Along with this Motion, Plaintiffs have also filed a Motion to Seal (ECF No. 330), a proposed sealed Memorandum (ECF No. 331) and a Certificate of Service (ECF No. 332). In the Motion to Seal, Plaintiffs state that the proposed sealed documents contain personal financial information designated by the producing parties during discovery as confidential. I recommend that the Motion to Seal be granted.

Realty Sales & Acquisitions, LLC; Plumber Pride, LLC; Schultz Siegel & Weiss, LLC; and Susquehanna Landscape of Maryland, LLC (collectively, I will refer to the defendant business entities as the "Alter Ego Defendants"). Mr. Francis and the Alter Ego Defendants have not filed a response, and the time for doing so has passed.  *See* Loc. R. 105.2.a. On May 29, 2014, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Quarles referred this case to me for a report and recommendation on the Motion. ECF No. 333.  I find that a hearing is unnecessary in this case.  *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6.  For the reasons set forth below, I respectfully recommend that Plaintiff's Motion be GRANTED.

## I.     FACTUAL AND PROCEDURAL HISTORY

In September 2012, Legacy LLC sued Susquehanna Bank and Susquehanna Trust & Investment Company in the Circuit Court for Baltimore County, Maryland for breach of contract and unjust enrichment. ECF No. 2 at 1, 14-15. The case was removed to this Court (*see* ECF No. 1) and counterclaims were brought against Legacy LLC, along with a third-party interpleader action, which named the Plaintiffs among the third-party defendants, to determine the ownership of certain funds. ECF No. 16. Plaintiffs filed an answer, affirmative defenses, cross-claims, counterclaims, and fourth-party claims against Mr. Francis, the Alter Ego Defendants and others (the "Counterclaim and Fourth Party Complaint"). ECF No. 148.

In general, Plaintiffs alleged that the Alter Ego Defendants, through Mr. Francis and with the assistance of the "many entities which he controlled and dominated, defraud[ed] the [Plaintiffs] of several million dollars in reserve and operating funds." ECF No. 329-1 at 3. Mr. Francis and the Alter Ego Defendants were properly served, but did not file any answer or responsive pleading within the requisite time period. On July 2, 2013, the Clerk of the Court entered a default against Mr. Francis and the Alter Ego Defendants. *See* ECF Nos. 227-229, 231-

2

240. On May 23, 2014, Plaintiffs filed the Motion, to which Mr. Francis and the Alter Ego Defendants have not responded.

## II.     LEGAL ANALYSIS

### A.     Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims

liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B.      Liability

#### 1.      Count I – Fraud

Count I of Plaintiffs' Counterclaim and Fourth Party Complaint asserts a claim of fraud against Mr. Francis. ECF No. 148 at 44-45. To prevail on a fraud claim under Maryland law, a plaintiff must show

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 385 Md. 1, 28 (2005).

Here, taking as true the well pleaded allegations of Plaintiffs' Counterclaim and Fourth Party Complaint (*see* ECF No. 148), Plaintiffs have shown that Mr. Francis, Legacy LLC and Legacy, Inc. knowingly and "with actual malice" misrepresented the nature of his bank accounts at Susquehanna and the funds contained in those accounts, including by "routinely providing false bank statements that showed incorrect balances in each of the HOA Accounts." ECF No. 148 at 45. In justifiable reliance on Mr. Francis's misrepresentations, Plaintiffs deposited their funds with Mr. Francis and entities he controlled, which were misappropriated by Mr. Francis

and the Alter Ego Defendants. Accordingly, I find that Plaintiffs have established Mr. Francis's liability for fraud and recommend that the Motion for Default Judgment be granted as to Count I of Plaintiffs' Counterclaim and Fourth Party Complaint (ECF No. 148 at 44-45).

### 2.      Count II – Breach of Fiduciary Duty/Constructive Fraud

Count II of Plaintiffs' Counterclaim and Fourth Party Complaint asserts a claim of breach of fiduciary duty and constructive fraud against Mr. Francis, Legacy LLC and Legacy, Inc. ECF No. 148 at 45-46. Constructive fraud is defined as

> a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 236 n.11 (1995) (internal quotation omitted).

Here, Plaintiffs have established that Mr. Francis, Legacy LLC and Legacy, Inc. agreed to provide services related to property management to Plaintiffs. Mr. Francis, Legacy, LLC, and Legacy, Inc. had a contractual obligation to manage the funds Plaintiffs entrusted to them as fiduciaries. Nonetheless, Mr. Francis, Legacy LLC and Legacy, Inc. misappropriated Plaintiffs' funds in violation of their fiduciary duties. I recommend that Plaintiffs' Motion for Default Judgment by granted as to Count II of Plaintiffs' Counterclaim and Fourth Party Complaint.[2]

---

[2] To the extent that Plaintiffs have also asserted a separate claim for breach of fiduciary duty, it is not clear that such a tort exists under Maryland law. In *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, the Court of Special Appeals recently observed that while "an alleged breach of fiduciary duty may give rise to a cause of action, . . . it does not, standing alone, constitute a cause of action." 197 Md. App. 586, 631 (2011) (citing *Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997) ("[T]here is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries.")).

### 3.   Count III – Conspiracy

Count III of Plaintiffs' Counterclaim and Fourth Party Complaint asserts a claim of conspiracy against Mr. Francis and the Alter Ego Defendants. ECF No. 148 at 46. A claim for civil conspiracy requires proof of:

> 1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff.

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007) (internal quotation omitted).

Here, Plaintiffs allege that Mr. Francis and the Alter Ego Defendants "agreed and conspired to steal millions of dollars" from Plaintiffs. To accomplish this theft, Plaintiffs allege that Mr. Francis and the Alter Ego Defendants "committed criminal acts, and acts of fraud and breaches of fiduciary duty." ECF No. 148 at 46. With respect to Game Janitorial, Plaintiffs allege that Mr. Francis was assisted in committing "acts of fraud and breaches of fiduciary duty" by Danielle Candella, who signed the corporation authorization resolution for Game Janitorial as the secretary. ECF No. 148 at 33. Ms. Candella assisted Mr. Francis in opening financial accounts in the names of the various Plaintiffs, but her connection with any other of the Alter Ego Defendants is unclear based on the allegations of the Counterclaim and Fourth Party Complaint. I find that Plaintiffs' allegations are sufficient to establish the liability of Mr. Francis and Game Janitorial for civil conspiracy.

With respect to the other Alter Ego Defendants, however, Plaintiffs do not allege that Mr. Francis conspired with any other person within the Alter Ego Defendants, only that he conspired with the Alter Ego Defendants, which were entities under his complete control. Plaintiffs have not presented any argument in their submissions on whether Maryland law permits a claim for civil conspiracy where only one person is involved (albeit with numerous business entities

6

owned and controlled by the person). It appears to me that unless Mr. Francis conspired with another person, which Plaintiffs do not allege, his liability for civil conspiracy cannot be established. Other courts have recognized generally that "corporate officers cannot conspire with their own corporation." *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 370-71 (D. Md. 1989) (citing *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986). Accordingly, I recommend that Plaintiffs' Motion for Default Judgment be granted as to Count III of the Counterclaim and Fourth Party Complaint with respect to Mr. Francis and Game Janitorial, LLC, but denied as to the other Alter Ego Defendants.

### 4.      Count IV – Aiding and Abetting

Count IV of Plaintiffs' Counterclaim and Fourth Party Complaint asserts a claim of aiding and abetting against all of the Alter Ego Defendants. ECF No. 148 at 46-47. Maryland has "expressly recognized aider and abettor tort liability." *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 199 (1995). To establish a person or entity's liability for aiding and abetting, a plaintiff must show that the person or entity was aware of a tort committed by a principal, and that the person or entity gave substantial assistance or encouragement to the principal to engage in the tortious conduct. *Id.* at 186. In a case where an individual within a corporate entity acts in his own interest, a corporate entity can be liable for aiding and abetting the fraudulent acts of that individual. *See Kay*, 197 Md. App. at 629-30.

In this case, Plaintiffs have established that Mr. Francis perpetrated a fraud against Plaintiffs. The Alter Ego Defendants necessarily had knowledge of this fraud and acted as the vehicles to assist Mr. Francis to perpetrate the fraud. Accordingly, the liability of the Alter Ego Defendants for aiding and abetting has been established. Because Mr. Francis's liability as a principal for fraud has already been established, I recommend that the Court grant the Motion for

Default Judgment as to Count IV of the Counterclaim and Fourth Party Complaint, but only as to the Alter Ego Defendants. I recommend that the Motion be denied as to Mr. Francis.

### 5.    Count V – Piercing the Corporate Veil

Count V of Plaintiffs' Counterclaim and Fourth Party Complaint is a request to pierce the corporate veil of the entities named as the Alter Ego Defendants. ECF No. 148 at 47-48. Under Maryland law, "courts will pierce the corporate veil only when necessary to prevent fraud or a paramount inequity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 310 (1975). In order to pierce the corporate veil, "plaintiff's well-pleaded allegations and evidence must be tantamount to fraud or invoke a paramount equity." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 553 (D. Md. 2011). Maryland courts are reluctant to pierce the corporate veil "except in the most obvious cases of fraud." *Id.* (noting that a party seeking to pierce the corporate veil by alleging fraud must present "clear and convincing evidence" of fraud). The Maryland Court of Appeals has not defined a "paramount equity" in the context of piercing the corporate veil. *Id.* (noting that the Court of Appeals has not yet pierced the corporate veil to enforce a paramount equity).

Here, the Court is not required to decide whether a paramount equity requires the corporate veil to be pierced because Plaintiffs have established the fraud committed by Mr. Francis, and aided and abetted by the Alter Ego Defendants. Mr. Francis "commingled corporate funds, diverted corporate assets, and used corporate assets to pay for his personal expenses." ECF No. 148 at 48. Plaintiffs' Motion also lists a number of fraudulent transactions Mr. Francis perpetrated through the Alter Ego Defendants. ECF No. 331 at 9. I find that Plaintiffs have sufficiently established that the Alter Ego Defendants "were either formed for or used principally

for the purpose of cheating and defrauding Fourth Party Plaintiffs," and I recommend that their request to pierce the corporate veil of the Alter Ego Defendants be granted.

### 6.    Count VI – RICO

Count VI of Plaintiffs' Counterclaim and Fourth Party Complaint asserts a claim of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Mr. Francis and the Alter Ego Defendants. ECF No. 148 at 48-50. Plaintiffs state that "[t]o simplify this motion, Plaintiffs intend to dismiss their RICO claim, Count VI of the Kings Council Counterclaim (Document 148 at 48)." ECF No. 329-1 at 4. Because Plaintiffs do not seek a default judgment as to Count VI, I recommend that the Motion be denied as to this count.

### 7.    Count VII – Fraudulent Transfer

Count VII of Plaintiffs' Counterclaim and Fourth Party Complaint asserts a claim of fraudulent transfer against Mr. Francis and the Alter Ego Defendants. ECF No. 148 at 50-51. The Maryland Uniform Fraudulent Conveyance Act provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors." Md. Code Ann., Com. Law § 15-207. To prevail on a claim of fraudulent conveyance, a plaintiff must show "that a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets." *Christian v. Minnesota Min. & Mfg. Co.*, 126 F. Supp. 2d 951, 961 (D. Md. 2001). Here, Plaintiffs contend that Mr. Francis and the Fourth Party Defendants are liable for fraudulent transfers and that it is a creditor of the defendants.

As discussed above, Plaintiffs have shown that they entrusted Mr. Francis and the Alter Ego Defendants with assets for property management services. Mr. Francis misappropriated these funds through the Alter Ego Defendants, with the intent to defraud Plaintiffs. *See* ECF No.

148 at 50. Having shown that creditor-debtor relationships existed between Plaintiffs and the Alter Ego Defendants, and that Mr. Francis and the Alter Ego Defendants fraudulently transferred the Plaintiffs' assets, I find that Plaintiffs have established Mr. Francis and the Alter Ego Defendants' liability for fraudulent transfer. I recommend that the Motion for Default Judgment be granted as to Count VII of Plaintiffs' Counterclaim and Fourth Party Complaint.

### C.      Damages

Having determined that Plaintiffs have established liability, it is now appropriate to determine the damages to which Plaintiffs are entitled. Generally, an evidentiary hearing is required to determine an award of damages, even in the case of a defendant's default. *See Laborers' Dist. Council Pension v. E.G.S., Inc.,* No. WDQ-09-3174, 2010 WL 1568595 (D. Md. Apr. 16, 2010). However, the Court may award damages "if the record supports the damages requested." *Id*. at *3 (collecting cases). Here, Plaintiffs have provided sufficient evidence to support their claim for damages, as outlined below.

### 1.      Compensatory Damages

Plaintiffs have established multiple claims for relief against the defendants, but each of the Plaintiffs has only suffered one injury. For each claim that has been established, each of the Plaintiffs' injuries was the same: Plaintiffs each lost a significant portion of their reserve funds entrusted to the defendants. Under the "one wrong, one recovery rule," a "plaintiff may not recover damages twice for the same injury simply because he has two legal theories." *Montgomery Ward & Co., Inc. v. Cliser*, 267 Md. 406, 425 (1972). In accordance with this rule, I have evaluated Plaintiffs' individual damages claims under Counts I (fraud) and IV (aiding and abetting fraud) of the Counterclaim.

### a.      Burns Street Tenants Association, Inc.

Burns Street Tenants Association, Inc. ("Burns Street") requests judgment for compensatory damages in the amount of $23,036.00. ECF No. 329-1 at 4. In support of this request, Burns Street has submitted the Affidavit of Billy J. Hughley ("Hughley"). ECF No. 329-2. Hughley is the President of Burns Street, a homeowner's association based in Washington, DC. *Id.* at 3. Hughley attests that in August 2011, Burns Street entered into a contract for management services with Legacy LLC. *Id.* at 4. Between October 2011 and August 2012, Mr. Francis and the Alter Ego Defendants made several deposits of Burns Street's reserve funds to an escrow account, which Legacy LLC opened in Burns Street's name. *Id.* In August 2012, Mr. Francis and the Alter Ego Defendants transferred $23,036.00 from Burns Street's account to a business checking account in Legacy, Inc.'s name. *Id.* This transfer was made without Burns Street's authorization. This $23,036.00 has not been returned to Burns Street. *Id.* at 5. In addition, Burns Street points to fraudulent bank statements Mr. Francis and the Alter Ego Defendants provided to Burns Street during the years of the business relationship. ECF Nos. 329-2 at 5 n.1 & 329-8.

Having reviewed Hughley's affidavit and the exhibits attached in support (ECF Nos. 329-3 to 329-8), I find that Burns Street has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $23,036.00, which represents the misappropriated funds that have not been returned. I recommend that Burns Street be awarded $23,036.00 against Mr. Francis and the Alter Ego Defendants.

### b.      Council of Unit Owners of Kings Council Condominium

The Council of Unit Owners of Kings Council Condominium ("Kings Council") requests judgment for compensatory damages in the amount of $32,569.01. ECF No. 329-1 at 4. In support of this request, Kings Council has submitted the Affidavit of Darryl Spruill ("Spruill").

ECF No. 329-9. Spruill is the president of Kings Council, a homeowner's association based in Upper Marlboro, Maryland. *Id.* at 3. Spruill attests that in October 2010, Kings Council entered into a contract for management services with Legacy LLC. *Id.* at 4. Between October 28, 2011 and August 10, 2012, Mr. Francis and the Alter Ego Defendants transferred a total of $32,569.01 of Kings Council's funds to a business checking account in Legacy, Inc.'s name. *Id.* at 4-6. These transfers were performed without Kings Council's authorization and the misappropriated funds have not been returned to Kings Council. *Id.* at 6. In addition, Kings Council has submitted fraudulent bank statements Mr. Francis and the Alter Ego Defendants provided to Kings Council during the years of the business relationship. ECF Nos. 329-9 at 6 n.1 & 329-18.

Having reviewed Spruill's affidavit and the exhibits attached in support (ECF Nos. 329-10 to 329-18), I find that Kings Council has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $32,569.01, which represents the misappropriated funds that have not been returned. I recommend that Kings Council be awarded $32,569.01 against Mr. Francis and the Alter Ego Defendants.

### c.    Frankford Estates Homeowners Association, Inc.

The Frankford Estates Homeowners Association, Inc. ("Frankford") requests judgment for compensatory damages in the amount of $6,274.66.[3] ECF No. 329-1 at 5. In support of this request, Frankford has submitted the Affidavit of Garry Aime ("Aime"). ECF No. 329-19. Aime is the president of Frankford, a homeowner's association based in Baltimore, Maryland. *Id.* at 3. Aime attests that in January 2011, Frankford entered into a contract for management services with Legacy LLC. *Id.* at 4. Between October 2011 and July 2012, Mr. Francis and the Alter Ego

---

[3] Plaintiffs' Motion states that Frankford incurred losses totaling $6,304.66, but the affidavit and exhibits to which it refers document a loss of $6,274.66. It appears to me that Plaintiffs' Motion contains a typographical error, and that the affidavit and exhibits are correct.

Defendants transferred a total of $7,249.66 of Frankford's funds to accounts in Legacy, Inc.'s name. *Id.* at 4-5. These transfers were performed without Frankford's authorization and while $975.00 of the funds was returned to Frankford, the remainder of the misappropriated funds has not been returned. *Id.* at 5-6. In addition, Frankford has submitted fraudulent bank statements Mr. Francis and the Alter Ego Defendants provided to Frankford during the years of the business relationship. ECF Nos. 329-19 at 5 n.1 & 329-26.

Having reviewed Aime's affidavit and the exhibits attached in support (ECF Nos. 329-20 to 329-26), I find that Frankford has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $6,274.66, which represents the misappropriated funds that have not been returned. I recommend that Frankford be awarded $6,274.66 against Mr. Francis and the Alter Ego Defendants.

### d. Council of Unit Owners of the Gardens at Owings Mills I

The Council of Unit Owners of the Gardens at Owings Mills I ("Owings Mills I") requests judgment for compensatory damages in the amount of $12,051.29. ECF No. 329-1 at 5. In support of this request, Owings Mills I has submitted the Affidavit of Donna DaRoja ("DaRoja"). ECF No. 329-27. DaRoja is the secretary of Owings Mills I, a condominium based in Reisterstown, Maryland. *Id.* at 3. DaRoja attests that on April 1, 2011, Owings Mills I entered into a contract for management services with Legacy LLC. *Id.* at 4. Between October 2011 and August 2012, Mr. Francis and the Alter Ego Defendants transferred nearly $500,000 of Owings Mills I's funds to accounts in Legacy, Inc.'s name. *Id.* at 4. These transfers were performed without Owings Mills I's authorization. *Id.* Of the funds misappropriated from Owings Mills I, $12,051.29 has not been recovered or returned. *Id.* at 4-5.

Having reviewed DaRoja's affidavit and the exhibits attached in support (ECF Nos. 329-28 to 329-31), I find that Owings Mills I has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $12,051.29, which represents the misappropriated funds that have not been returned. I recommend that Owings Mills I be awarded $12,051.29 against Mr. Francis and the Alter Ego Defendants.

### e.     Council of Unit Owners of the Gardens at Owings Mills II

The Council of Unit Owners of the Gardens at Owings Mills II ("Owings Mills II") requests judgment for compensatory damages in the amount of $23,739.90. ECF No. 329-1 at 5-6. In support of this request, Owings Mills II has submitted the Affidavit of Donna DaRoja ("DaRoja"). ECF No. 329-32. DaRoja is the secretary of Owings Mills II, a homeowner's association based in Reisterstown, Maryland. *Id.* at 3. DaRoja attests that on April 1, 2011, Owings Mills II entered into a contract for management services with Legacy LLC. *Id.* at 4. Between October 2011 and September 2012, Mr. Francis and the Alter Ego Defendants transferred more than $200,000 of Owings Mills II's funds to accounts in Legacy, Inc.'s name. *Id.* at 4-5. These transfers were performed without Owings Mills II's authorization. *Id.* Of the funds misappropriated from Owings Mills II, $23,739.90 has not been recovered or returned. *Id.* at 4-5.

Having reviewed DaRoja's affidavit and the exhibits attached in support (ECF Nos. 329-33 to 329-36), I find that Owings Mills II has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $23,739.90, which represents the misappropriated funds that have not been returned. I recommend that Owings Mills II be awarded $23,739.90 against Mr. Francis and the Alter Ego Defendants.

### f.       The Crossing at Chaddsford Homeowners Association, Inc.

The Crossing at Chaddsford Homeowners Association, Inc. ("Chaddsford") requests judgment for compensatory damages in the amount of $32,196.03. ECF No. 329-1 at 6. In support of this request, Chaddsford has submitted the Affidavit of Thomas Prince ("Prince"). ECF No. 329-37. Prince is the president of Chaddsford, a homeowner's association based in Brandywine, Maryland. *Id.* at 3. Prince attests that on May 1, 2008, Chaddsford entered into a contract for management services with Legacy LLC. *Id*. at 4. Between October 2011 and July 2012, Mr. Francis and the Alter Ego Defendants transferred $34,196.03 of Owings Mills II's funds to accounts in Legacy, Inc.'s name. *Id.* at 4-5. These transfers were performed without Owings Mills II's authorization. *Id*. Of the funds misappropriated from Owings Mills II, $2,000 was recovered, but the remaining $32,196.03 has not been recovered or returned. *Id.* at 4-5.

Having reviewed Prince's affidavit and the exhibits attached in support (ECF Nos. 329-38 to 329-44), I find that Chaddsford has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $32,196.03, which represents the misappropriated funds that have not been returned. I recommend that Chaddsford be awarded $32,196.03 against Mr. Francis and the Alter Ego Defendants.

### g.       The Olney Towne Association, Inc.

The Olney Towne Association, Inc. ("Olney") requests judgment for compensatory damages in the amount of $29,426.25. ECF No. 329-1 at 6. In support of this request, Olney has submitted the Affidavit of Christopher Jeffrey ("Jeffrey"). ECF No. 329-46. Jeffrey is the president of Olney, a homeowner's association based in Olney, Maryland. *Id.* at 3. Jeffrey attests that on September 9, 2009, Olney entered into a contract for management services with Legacy LLC. *Id*. at 4. Between October 2011 and July 2012, Mr. Francis and the Alter Ego Defendants

transferred at least $29,426.25 of Olney's funds to accounts in Legacy, Inc.'s name. *Id.* at 4-6. These transfers were performed without Olney's authorization. *Id*. Of the funds misappropriated from Olney, $29,426.25 has not been recovered or returned. *Id.* at 4-6. In addition, Olney has submitted fraudulent bank statements Mr. Francis and the Alter Ego Defendants provided to Olney during the years of the business relationship. ECF Nos. 329-46 at 6 n.1 & 329-55.

Having reviewed Jeffrey's affidavit and the exhibits attached in support (ECF Nos. 329-47 to 329-55), I find that Olney has made a sufficient evidentiary showing to support an award of compensatory damages in the amount of $29,426.25, which represents the misappropriated funds that have not been returned. I recommend that Olney be awarded $29,426.25 against Mr. Francis and the Alter Ego Defendants.

### 2.      Punitive Damages

A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). There is no prohibition in the Federal Rules of an award of punitive damages in a default judgment, provided that they are sought in a plaintiff's complaint. *See, e.g., Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51, 83 (D.D.C. 2010) (awarding punitive damages in a default judgment). Here, Plaintiffs' Counterclaim seeks "punitive damages in the amount of $10,000,000" against Mr. Francis (Counts I & II) and Legacy, LLC and Legacy, Inc. (Count II). *Id.* at 44-45. In Count IV, Plaintiffs' Counterclaim seeks for the Legacy Entities to "be held jointly and severally liable for any judgment entered against Defendant Francis." *Id*. at 46-47.

Punitive damages are available under Maryland law in tort actions. *See Bowden v. Caldor, Inc.*, 350 Md. 4, 22 (1998). Punitive damages serve to punish a defendant "for egregiously bad conduct toward the plaintiff, [and] also to deter the defendant and others

16

contemplating similar behavior." *Id.* (internal quotation omitted). An award of punitive damages is discretionary, *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 773-74 (2000), and a number of factors must be considered in determining whether an award of punitive damages is appropriate, including the minimum amount of damages that will deter the defendant and others from similar misconduct, the proportion of punitive damages to compensatory damages, and the financial circumstances of the defendant. *See HBCU Pro Football, LLC v. New Vision Sports Properties, LLC*, No. WDQ-10-0467, 2011 WL 2038512 (D. Md. May 24, 2011).

In the case of fraud, punitive damages may be awarded where a defendant acts with "actual malice." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 162 (2013) (defining "actual malice" as "a misrepresentation [made] with intent to deceive and actual knowledge of the falsity of the representation") (internal quotation omitted) (citing *Hoffman v. Stamper*, 384 Md. 1, 41-43 (2005)). Actual malice may be evidenced by "an element of aggravation, evidenced by malicious, deliberate, gross or wanton conduct [accompanying] the fraud." *Crawford v. Mindel*, 57 Md. App. 111, 126 (1984) (citing *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 530-31 (1976)).

Here, Plaintiffs argue that the fraud Mr. Francis and the Alter Ego Defendants perpetrated against them "is the 'type of deliberate wrongdoing' that was undertaken with an 'evil motive that has traditionally justified the award of punitive damages.'" ECF No. 329-1 at 10 (quoting *Hoffman*, 384 Md. at 42). Plaintiffs seek an award of punitive damages in an amount equal to three times the amount of the compensatory damages award. *Id.* Under Maryland law, there is no presumptively reasonable proportion of punitive damages to compensatory damages. Nonetheless, the Court of Appeals has noted that numerous statutes in Maryland authorizing

punitive damages limit any award to a maximum of three times of the actual damages awarded. *Bowden*, 350 Md. at 39 n.11 (collecting statutes).

I find that a punitive damages award of $300,000 is appropriate in this case. I have considered the compensatory damages that I have recommended to be awarded, which total $159,293.14. It is noteworthy that this amount is less than the total amount of the funds Mr. Francis and the Alter Ego Defendants misappropriated from Plaintiffs. The affidavits submitted in support of Plaintiffs' Motion attest that, in several instances, most of the funds misappropriated by the Alter Ego Defendants were recouped by Plaintiffs by credits to their financial accounts, or by recovery on execution of another judgment. I also consider that Mr. Francis used "millions of dollars of protected reserve funds . . . to fund his extravagant lifestyle and to fund his various business ventures." ECF No. 148 at 26, 43. These factors weigh in favor of a significant punitive damages award, as Mr. Francis and others contemplating engaging in similar misconduct must be deterred from doing so.

Although deterring Mr. Francis and others in his position is a principal concern in calculating an appropriate award of punitive damages, I recognize that punitive damages may not be designed to bankrupt or financially destroy a defendant. While Plaintiffs have not produced any evidence of Mr. Francis's financial condition,[4] the Counterclaim and Fourth Party Complaint states that "[o]n March 5, 2013, Mr. Francis pleaded guilty to possession of an illegal firearm" in the Circuit Court for Howard County, Maryland, and at least as of the date of the Counterclaim was awaiting sentencing. ECF No. 148 at 44. This fact, along with other allegations contained in the Counterclaim and Fourth Party Complaint suggest that Mr. Francis does not have significant

---

[4] Plaintiffs are not required to produce information about a defendant's ability to pay punitive damages. *See Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 275 (2004).

assets or employment that would permit him to satisfy a large judgment. A punitive damages award of $300,000, less than the award of three-times the compensatory damages sought by the Plaintiffs, is sufficient to deter Mr. Francis and others in his position from engaging in fraudulent conduct in the future, but not so great as to "financially destroy" the defendant.

### 3.      Allocation of Total Damages

I recommend that judgment in the total amount of $459,293.14 (the sum of $159,293.14 in compensatory damages and $300,000 in punitive damages) be entered against Mr. Francis and the Alter Ego Defendants, jointly and severally. Plaintiffs are entitled to judgment in this amount against Mr. Francis based on their allegations in Count I of the Counterclaim and the damages sought therein. In addition, Plaintiffs are entitled to judgment in this amount against the other Alter Ego Defendants based on their allegations in Counts IV, which requests that the Alter Ego Defendants "be held jointly and severally liable for any judgment entered against Defendant Francis." ECF No. 148 at 47.

I recommend that judgment be entered in favor of each of the Plaintiffs as set forth in the table below. The first column of the table beside the name of each of the Plaintiffs contains the amount of compensatory damages I recommend. The second column contains the amount of punitive damages I recommend. This amount was calculated by multiplying each of the Plaintiffs' compensatory damages award by the ratio of punitive to compensatory damages that I recommend ($300,000 divided by $159,293.14). The last column contains the total recommended damages award for each of the Plaintiffs.

| Plaintiff | Compensatory Damages | Punitive Damages | Total Judgment |
|---|---|---|---|
| Burns Street Tenants Association, Inc. | $23,036.00 | $43,384.17 | $66,420.17 |
| Council of Unit Owners of Kings Council Condominium | $32,569.01 | $61,337.88 | $93,906.89 |
| Frankford Estates Homeowners Association, Inc. | $6,274.66 | $11,817.19 | $18,091.85 |
| Council of Unit Owners of the Gardens at Owings Mills I | $12,051.29 | $22,696.44 | $34,747.73 |
| Council of Unit Owners of the Gardens at Owings Mills II | $23,739.90 | $44,709.83 | $68,449.73 |
| Crossing at Chaddsford Homeowners Association, Inc. | $32,196.03 | $60,635.44 | $92,831.47 |
| Olney Towne Association, Inc. | $29,426.25 | $55,419.05 | $84,845.30 |

## III.    CONCLUSION

In sum, I recommend that the Court:

1.     Grant Plaintiffs' Motion to Seal (ECF No. 330);

2.     Grant Plaintiffs' Motion for Default Judgment (ECF No. 329) as to the liability of Mr. Francis and the Alter Ego Defendants;

3.     Enter judgment in favor of Plaintiffs against Mr. Francis and the Alter Ego Defendants, jointly and severally, in the total amount of $459,293.14, as follows:

| Plaintiff | Compensatory Damages | Punitive Damages | Total Judgment |
|---|---|---|---|
| Burns Street Tenants Association, Inc. | $23,036.00 | $43,384.17 | $66,420.17 |
| Council of Unit Owners of Kings Council Condominium | $32,569.01 | $61,337.88 | $93,906.89 |
| Frankford Estates Homeowners Association, Inc. | $6,274.66 | $11,817.19 | $18,091.85 |
| Council of Unit Owners of the Gardens at Owings Mills I | $12,051.29 | $22,696.44 | $34,747.73 |
| Council of Unit Owners of the Gardens at Owings Mills II | $23,739.90 | $44,709.83 | $68,449.73 |
| Crossing at Chaddsford Homeowners Association, Inc. | $32,196.03 | $60,635.44 | $92,831.47 |
| Olney Towne Association, Inc. | $29,426.25 | $55,419.05 | $84,845.30 |

I also direct the Clerk to mail a copy of this Report and Recommendation to the following defendants: William K. Francis; Legacy Investment & Management, Inc.; Legacy Investment and Management, LLC; Gorgeous Prince George's LLC d/b/a The Grounds Guy-Prince George's County; Kennedy Compound, LLC; Epitome Properties, LLC; Global Acquisitions Management Enterprises, Inc. d/b/a Game Janitorial; Iconic Corporate Leasing, LLC; JobsGatesZuck Realty, LLC; Legacy Investment & Management – Realty Sales & Acquisitions, LLC; Plumber Pride, LLC; Schultz Siegel & Weiss, LLC; and Susquehanna Landscape of Maryland, LLC. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


October 17, 2014                              _____/s/_____
Date                                         Timothy J. Sullivan
                                             United States Magistrate Judge